ST. PIUS X PARISH
CORPORATION, Westerly

v.

Henry J. MURRAY, Jr., et al.

No. 88–3–M.P.

Supreme Court of Rhode Island.

April 26, 1989.

William T. Murphy, Providence, for plaintiff.

Marc B. Gursky, Raul L. Lovett, Lovett, Schefrin & Gallogly, Ltd., William G. Brody, Powers, Harsch & Kinder, Inc., Providence, for defendant Martin Aisenberg, Jones & Aisenberg, Providence, for ACLU.

## OPINION

SHEA, Justice.

This matter comes before the Supreme Court by way of a petition for a writ of certiorari. The petitioner, St. Pius X Parish Corporation (employer), sought review by this court after the Sixth Division District Court denied its appeal from a decision of the Board of Review of the Rhode Island Department of Employment Security (board of review). In denying its appeal, the District Court affirmed the board of review's award of unemployment compensation benefits to the respondent Donna Doll (employee). We affirm.

The employee was hired on August 7, 1984, to serve as a lay teacher at employer's parochial school in Westerly, Rhode Island, during the 1984–85 academic year. The employment contract stated that she was to be employed for one year only—September 1, 1984, to August 31, 1985—and that she would receive a salary of $8,000 to be paid in twenty equal installments. This contract also provided:

> "It is agreed that the teacher will abide by the published rules and regulations of the Office of the Superintendent of Catholic Schools and this school, as amended from time to time. This appointment is subject to termination for failure to abide by such rules and regulations or for insubordination or conduct unbecoming a teacher or continuously poor performance."

The employee's duties included teaching English to grades 5 through 8 and supervising one homeroom. For the first eight months of her employment, from September 1984 to April 1985, she apparently per-

formed these duties without incident. However, in April of 1985 employee, a member of the Catholic church, informed her superiors that she was planning to be married in a service outside the Catholic church. Shortly thereafter her superiors referred her to regulation 302–G promulgated by the Office of the Superintendent of Catholic Schools. Paragraph No. 2 of this regulation states that "[a] Catholic lay teacher, married outside of the Church, shall not be hired to teach, or allowed to continue to teach, in a Catholic school of the Diocese." Even though employee's plans for marriage were in clear violation of regulation 302–G, employer did not terminate her employment. Instead, employer allowed her to fulfill her contract by finishing the term but would not renew her contract for the following academic year.

■ The employee was notified on June 12, 1985, her last day of work, that her contract would not be renewed. She filed for employment security benefits on June 13, 1985, and was approved to receive benefits by the director of the Department of Employment Security (DES) on June 24, 1985. The employer appealed the decision to the DES Appeals Tribunal Referee. On August 1, 1986, the referee sustained the decision of the director. The employer then appealed the referee's decision to the DES board of review, which again confirmed the decision to grant benefits. On May 15, 1987, employer appealed again, this time to the Sixth Division District Court, which affirmed the decision of the board of review and dismissed employer's complaint. The employer then petitioned this court for issuance of a writ of certiorari, which was granted on March 31, 1988.

The Rhode Island Employment Security Act provides:

"Benefits based on service in employment for * * * educational institutions * * * shall be payable in the same amounts on the same terms and subject to the same conditions as benefits payable on the basis of other services * * * except that:
(1) With respect to services performed * * * in an instructional * * * capacity for an educational institution (including elementary and secondary schools and institutions of higher education) benefits shall not be paid based on those services for any week of unemployment commencing during the period between two (2) successive academic years * * * *if that individual performs those services in the first of such academic years (or terms) and if there is a contract or a reasonable assurance that such individual will perform services in any such capacity for any educational institution in the second of those academic years or terms * * *."* G.L.1956 (1986 Reenactment) § 28–44–68.[1] (Emphasis added.)

The employee in this case was hired, under contract, to work as a teacher for one year. She performed her contractual duties and, at the end of the school's spring term, was notified that her employment contract would not be renewed for the following academic year. Relying on these facts and the lack of any evidence regarding her chances of future employment as a teacher, we find that employee was without "reasonable assurance" that she would "perform services in any such capacity for any educational institution" and was entitled to benefits under this section. Section 28–44–68.

The employer argues, however, that even though employee may qualify to receive benefits under § 28–44–68, she is ineligible to receive those benefits as she was "discharged for proved misconduct" under § 28–44–18.[2] Pursuant to § 28–44–18,

---

**1.** The statute in force at the time employee filed for benefits, G.L.1956 (1979 Reenactment) § 28–44–68, was amended by P.L.1986, ch. 198, § 1, in the 1986 Reenactment. The 1986 Reenactment made stylistic changes and word substitutions but no substantive alterations. In all relevant aspects, the statutes are identical. For the purposes of clarity we shall refer to the 1986 Reenactment.

**2.** The statute in force at the time plaintiff filed for benefits, § 28–44–18, was amended by P.L. 1986, ch. 198, § 1, in the 1986 Reenactment. Although the 1986 Reenactment made several word substitutions, no substantive alterations

"[a]n individual who has been discharged for proved misconduct connected with his work shall thereby become ineligible for benefits for the week in which that discharge occurred and until he establishes to the satisfaction of the director that he has, subsequent to that discharge, had at least four (4) weeks of work, and in each of that four (4) weeks has had earnings of at least twenty (20) times the minimum hourly wage as defined in chapter 42 of this title."

The employer contends that by marrying outside the Catholic church, employee, a practicing Catholic, violated her contractual obligation to abide by the Regulations of the Office of the Superintendent of Catholic Schools and thus was "discharged for proved misconduct" under § 28–44–18. This statute allows for the denial of unemployment compensation benefits when an employee is (1) "discharged" for (2) "proved misconduct." Section 28–44–18. Neither requirement has been met in this case.

■ The employer became aware of employee's plans to marry outside the Catholic church in April 1985. Regulation 302–G, paragraph 2, required that she be discharged. However, employee was allowed to continue teaching for the remainder of the 1984–85 academic year, at which time she was notified that her one-year contract would not be renewed. Relying on these facts, we find that the nonrenewal of employee's contract does not amount to a "discharge" as contemplated by § 28–44–18.

As used in § 28–44–18, the term "discharge" refers to the type of deliberate dismissal of an employee that results in the immediate termination of that employee's ongoing employment obligations.[3] Because employee was allowed to fulfill her contractual duties, employer's nonrenewal of her contract did not act to extinguish an ongoing employment obligation and, therefore, is not a "discharge" within the meaning of § 28–44–18.

In order for employee to be ineligible for benefits she must also be shown to have engaged in "proved misconduct connected with his [her] work." Section 28–44–18. This court has had only one relevant opportunity to define "proved misconduct."[4] In *Turner v. Department of Employment Security, Board of Review*, 479 A.2d 740 (R.I.1984), we held that "proved misconduct" under § 28–44–18 is limited to

"conduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good faith errors in judgment or discretion are not to be deemed 'misconduct' within the meaning of the statute." *Id.* at 741–42 (quoting *Boynton Cab Co. v. Neubeck*, 237 Wis. 249, 259–60, 296 N.W. 636, 640 (1941)).

■ Every employer has a right, to some extent, to govern its employees through the establishment of performance standards and rules of conduct the violation of which may be grounds for dismissal. *Hickenbottom v. District of Colum-*

---

were made. In all relevant aspects, the statutes are identical. For the purposes of clarity we shall refer to the 1986 Reenactment.

**3.** *Compare* Black's Law Dictionary 416 (West 5th ed. 1979) ("Discharge. To release; liberate; annul; unburden; disincumber; dismiss. To extinguish an obligation; terminate employment of person.")

**4.** This court has had one other opportunity to define "proved misconduct"; however, that definition is inapplicable to the present situation. *See Ranone v. Department of Employment Security, Board of Review*, 474 A.2d 748, 750 (R.I. 1984) (a labor strike by federal air-traffic controllers in violation of federal law constituted misconduct under § 28–44–18 as a matter of law).

*bia Unemployment Compensation Board,* 273 A.2d 475, 478 (D.C. Ct.App.1971). However, even though it is the employer who determines whether the violation of such a rule is grounds for dismissal, whether such a violation amounts to statutory "misconduct" is another matter. *Id.* Therefore, even though employee's marriage gave employer grounds to dismiss her from her teaching position under regulation 302–G, that fact would not necessarily disqualify her from receiving unemployment compensation benefits under § 28–44–18.

In *Turner* this court found the criminal acts of a fire inspector, involving the sale of fire-door approval tags to builders who would then attach them to unapproved doors, to be "willful or wanton" misconduct under § 28–44–18. *Turner,* 479 A.2d at 741–42. The employee's conduct is distinguishable. Even though there is no requirement that an employee's actions rise to the level of criminal conduct present in *Turner* before becoming statutory misconduct, employee's marriage and her announcement to her students that she would not be returning for religious reasons involving her marriage did not, in our opinion, constitute the type of misconduct contemplated by § 28–44–18.

■ The employer further argues that even if employee is found to be eligible for benefits, the tax that the Employment Security Act would then impose on employer to pay for those benefits [5] creates an unconstitutional burden on employer's right to the free exercise of religion. U.S. Const. Amend. I; R.I. Const. art. I, § 3. We observe, however, that employer in this case has voluntarily elected to participate in this state's unemployment compensation system even though the services performed for employer are specifically exempt from the provisions of the Employment Security Act.[6] Given employer's voluntary participation in this program, with full knowledge of its inherent potential for imposing such a tax, we find no basis for employer's free-exercise complaint in either the statute or our interpretation thereof.

■ The employer's claim that the decisions by the board of review and the District Court are in error for lack of specific findings of fact is without merit. The District Court's adoption of the referee's decision provides a sufficient factual basis for its decision. Under the Rhode Island Administrative Procedures Act, G.L.1956 (1988 Reenactment) § 42–35–15,[7] judicial review of an agency determination is limited to questions of law. *Powell v. Department of Employment Security, Board of Review,* 477 A.2d 93, 95–96 (R.I.1984). The court does not weigh evidence or findings of fact, but merely reviews them to see whether they support the agency's decision. *Id.* at 95. Since such evidence did exist the District Court properly sustained the decision of the board of review.

For the reasons stated above, the employer's petition for writ of certiorari is denied, the writ heretofore issued is

---

5. Once an employee is found to be eligible to receive unemployment compensation benefits, the Employment Security Act requires the former employer to begin contributing toward the cost of those benefits. These employer contributions are collected in the form of a tax assessed pursuant to G.L.1956 (1986 Reenactment) chapter 43 of title 28. The 1986 Reenactment is referred to here only for the purposes of clarity. The actual tax assessment in this case is governed by the various sections in force at the time employee filed for benefits.

6. See G.L.1956 (1986 Reenactment) § 28–42–8(4)(A)(i), as amended by P.L.1988, ch. 277, § 1, regarding employment specifically exempt from the *Employment Securities Act,* and § 28–42–12, regarding an exempt employer's option to elect to become subject to the provisions of the act. Even though these statutes have been amended since the time employee filed for benefits, they have undergone no substantive alterations. In all relevant aspects, the new reenactments are identical to their predecessors and are referred to solely for the purpose of clarity.

7. The statute in force at the time employee filed for benefits, G.L.1956 (1984 Reenactment) § 42–35–15, as amended by P.L.1984, ch. 183, § 2, has been succeeded by G.L.1956 (1988 Reenactment) § 42–35–15. Although the 1988 Reenactment made several minor word substitutions and punctuation changes, it made no substantive alterations to this section of the Administrative Procedures Act. In all relevant aspects the statutes are identical. For the purposes of clarity we have referred to the 1988 Reenactment.

quashed, and the papers of the case are remanded to the District Court with our decision endorsed thereon.