[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
This matter is before the court pursuant to Rhode Island General Law 1956 (1988 Reenactment) § 42-35-15 appealing a decision of the Rhode Island Department of Human Services (hereinafter "DHS") denying plaintiff's application for medical assistance with respect to nursing home facility payments.
The facts of the case are not in dispute. Mabel Derlien, 94, (hereinafter plaintiff) has been a resident of Cherry Hill Nursing Home since January of 1990. On April 16, 1990, plaintiff filed an application for Medical Assistance with respect to nursing home facility payments. The application indicated a January 1990 sale of plaintiff's former residence at 206 Riverside Drive, East Providence, Rhode Island to her stepson, William Derlien, for $125,000. As required by DHS 0366 (VI)(A), DHS field staff investigated the transfer of plaintiff's home. In exchange for the property, plaintiff received a promissory note for the principal amount of $125,000 plus ten percent (10%) per annum for 20 years. Mr. Derlien was required to pay his mother $1,206.00 monthly. The promissory note included a claim which forgave all indebtedness upon the death of the plaintiff. Thus, this monthly payment would terminate upon plaintiff's death.
Upon review of the transfer, DHS denied plaintiff's application for Medical Assistance indicating that "the amount of the outstanding principal balance of the promissory note is considered a resource ($125,000 less payment made) per Resource Unit as set forth in the SRS Manual, Section 324, pp. 26-28." Mr. DelSesto, Chief of the Resource Unit of DHS rendered the decision and raised the issue as to whether the transfer was made for fair market value. However, since the promissory note was found to be negotiable, Mr. DelSesto never reached the issue as to fair market value.
Plaintiff appealed the DHS decision and requested an administrative hearing. On July 18, 1990 Alan Lemery, an appeals officer, conducted an administrative hearing. After hearing testimony from both sides, Mr. Lemery concluded that the promissory note was not a negotiable instrument and even if it were negotiable, it had little or no value. As such, pursuant to DHS 0324 (III)(B)(4)(c) the non-negotiable instrument was not a countable resource. Furthermore, Mr. Lemery concluded that due to the language of the note and plaintiff's advanced age, plaintiff transferred her former residence for less than fair market value. Mr. Lemery sustained the initial DHS decision denying plaintiff medical benefits and remanded the case back to the Cranston Long-Term Care Office to determine the period of ineligibility.
Plaintiff appeals the administrative agency's decision and submits that the appeals officer's analysis should have ended upon the determination that the note was non-negotiable and should not have addressed the fair market value of the transfer.
In reviewing an agency decision, this court is bound by the standard of review enunciated in the Administrative Procedures Act, G.L. 1956 (1988 Reenactment) § 42-35-15 which confers appellate jurisdiction in this Superior Court to review various administrative agency decisions and limits the scope of review. The pertinent part of the statute reads as follows:
 42-35-15. Judicial review of contested cases.
 (g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions; (2) In excess of the statutory authority of the agency; (3) Made upon unlawful procedure; (4) Affected by other error of law; (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
This court may not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. Costa v.Registrar of Motor Vehicles, 543 A.2d 1307, 1309 (R.I. 1988). This court must not weigh evidence or findings of fact, but merely review them to see whether they support the agency's decision. St. Pius X. Parish Corp. v. Murray, 557 A.2d 1214, 1218 (R.I. 1989). Judicial review on appeal is limited to an examination of the certified record. G.L. 1956 (1988 Reenactment) § 42-35-15(f); Easton's Point Ass'n v. Coastal Resources Mgt.Council, 559 A.2d 633, 636 (R.I. 1989). This court is required to uphold the agency's decision unless the agency's findings are clearly erroneous in view of the reliable, probative, and substantial evidence contained in the whole record. Costa, at 1309.
Plaintiff argues that the transfer of her former residence to her son in exchange for a promissory note complied with DHS regulations. Plaintiff asserts that the hearing officer's analysis should have ended upon his determination that the promissory note was not a countable resource. Plaintiff fails to understand the scope of the appeal officer's review. The hearing officer addressed the issues raised by the initial DHS decision. The issue as to whether plaintiff's former residence was transferred for fair market value was properly addressed by the appeals officer as the issue had been raised by Mr. DelSesto during his initial DHS decision.
The record indicates that the appeals officer first addressed the issue as to the negotiability of the promissory note. The record indicates that the promissory note reads as follows:
 For value received, the undersigned promises to pay to Mabel E. Derlien, (hereinafter referred to as "Holder") . . . the principal sum of One Hundred Twenty-Five Thousand and 00/100 ($125,000.00), with interest from the date hereof at the rate of ten (10%) per cent per annum on the unpaid balance.
 This note shall be forgiven upon the death of Mabel E. Derlien.
DHS 0324 (III)(B)(4)(a) defines a promissory note as a "written agreement signed by a person who promises to pay a specific sum of money at a specific time, or on demand, to the person, or organization named on the note as holder." DHS 0324 (III)(B)(4)(c) further indicates that "promissory notes . . . are negotiable if the owner (lender) has the legal right to sell the instrument, or has an interest in the instrument which can be converted to cash." G.L. 1956 (1985 Reenactment) §6A-3-104(1)(d), as amended by P.L. 1989, ch. 310, § 1, provides that "[a]ny writing to be a negotiable instrument within this chapter must be payable to order or to bearer." According to DHS 0324 (III)(B)(4)(c), those "instruments determined to be non-negotiable by the Resource Unit are considered unavailable resources."
Pursuant to the language of the note, plaintiff may not transfer the note to a third party. The promissory note is not payable to order or to bearer. Evidence in the record reveals that, both Mr. Thomas O. Sweeney, Executive Vice-President of Henry W. Cooke Company and Daniel J. Ryan, a Certified Public Accountant, agree that the promissory note in question lacked the standard bearer language thereby resulting in its non-negotiability. Thus, upon review of the whole record, this court finds substantial evidence to support Mr. Lemery's conclusion that pursuant to DHS 0324 (III)(B)(4)(a), DHS 0324 (III)(B)(4)(c) and G.L. 1956 (1985 Reenactment) § 6A-3-104(1)(d), as amended by P.L. 1989, ch. 310, § 1, plaintiff's promissory note does not qualify as a negotiable promissory note, thereby disqualifying the promissory note as a countable resource.
Secondly, Mr. Lemery turned his analysis to the fair market value of transfer. Evidence in the record reveals that the fair market value of the property in question was $125,000. This fact is not in dispute. However, the dispute arises over the determination of the value of the promissory note transferred to plaintiff. DHS regulation 0366 (II)(A) provides in pertinent part:
 There will be a period of ineligibility for nursing facility payment (and for payment for services equivalent to nursing facility services, such as Home and Community based services under a waiver, or Administratively necessary days in a hospital) for institutionalized applicants who transferred resources for less than fair market value within 30 months prior to, or anytime after, the date the institutionalized individual applies for Medical Assistance.
Furthermore, DHS regulation 0366 (II) provides that "any transfer of resources is presumed to have been for the purpose of establishing eligibility for Medical Assistance payment for the costs of institutional care." Thus, plaintiff has the burden of proof that her transfer was made for another purpose.
The record indicates that plaintiff became institutionalized in January of 1990 and applied for Medical Assistance in April of 1990. Furthermore, it is undisputed that plaintiff transferred her former residence in January of 1990, within 30 months of her institutionalization. Mr. Derlien testified that the property in question was transferred in January of 1990 to enable the property to remain in the family. Mr. Derlien also testified that he wanted to make certain regular income was available to his stepmother while she was in the nursing home. These explanations fail to overcome the presumption that the transfer was for the purpose other than establishing eligibility for Medical Assistance.
Because the promissory note was not negotiable and could not be sold or transferred to a third party, the appeals officer determined the actual amount plaintiff alone would receive from the transfer. According to an Annuity Table, the life expectancy of plaintiff, a 94 year-old woman, is 4.37 years. This means that plaintiff would collect only 53 months of payments of $1,206.00 each. The mortgage amortization table of record further indicates that plaintiff would receive a total of $10,912.94 in principal over the 53 months. Thus, in fact plaintiff transferred her property for $10,912.94, not $125,000.00, the fair market value of the property. As such, pursuant to DHS 0366 (II)(A), plaintiff transferred her property for less than fair market value within 30 months of her institutionalization and is thereby ineligible for Medical Assistance. Sufficient evidence in the record supports Mr. Lemery's conclusion that plaintiff is ineligible for Medical Assistance.
Lastly, in order to determine the period of ineligibility for nursing home payments, the appeals officer determined the uncompensated value of plaintiff's transfer. The appeals officer's analysis concluded the uncompensated value to be equal to the fair market value of the property, ($125,000) minus the principal amount plaintiff would receive over the 53 months of her expected life ($10,912.94). This analysis is supported by the record.
Upon review of the entire record, this court finds that sufficient evidence supports the agency's decision that the promissory note in question is non-negotiable and furthermore, that plaintiff has failed to overcome the presumption that the January 1990 transfer of her former residence was for the purpose other than establishing eligibility for Medical Assistance. Accordingly, this court denies plaintiff's appeal and hereby sustains the agency's decision denying plaintiff Medical Assistance.