[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
Before this court is an appeal by Priscilla Griscom ("appellant") from a decision of the Coastal Resources Management Council ("CRMC") denying her application to maintain a deck on her land bordering Maschaug Pond in the Town of Westerly, Rhode Island. Jurisdiction is pursuant to R.I.G.L. § 42-35-15. The pertinent facts of the case are as follows.
FACTS
Appellant and her late husband, Clement Griscom,[1]
purchased the subject property, a strip of land along Maschaug Pond, in 1972. Maschaug Pond is a coastal pond adjacent to a barrier beach at Watch Hill. (Watch Hill Quadrangle map at p. 4b). The pond is subject to irregular inflow from the ocean, the frequency and amount dependent on the number of storms in the area (Report of CRMC Staff Biologist ["Biologist's Report"] at 4a).
Though some residential development exists in the vicinity, the land surrounding Maschaug Pond is primarily undeveloped. The Griscoms have not built a house on their property because of deed restrictions dating back to 1913. Appellant and her family have used the property primarily as a recreation area for picnics, fishing, and swimming. On May 27, 1986, Clement Griscom obtained a building permit from the Town of Westerly for the construction of a 300 square foot "platform or deck for recreational purposes."
The Griscoms built the deck in August 1986. The completed deck measured 1330 square feet, well in excess of the 300 square feet stated in the building permit application. After completing the deck, appellant and her late husband sought a CRMC assent for maintaining the "observation deck." (CRMC application for State Assent by Clement and Priscilla Griscom ["CRMC Application"]). Mr. Griscom explained his failure to apply for an assent prior to construction of the deck as "the result of a misunderstanding on the part of the owner. Mr. Griscom stated that prior to construction he did not believe that he was required to obtain CRMC approval because the deck would not be close to the water and because the Town of Westerly officials did not instruct him to obtain CRMC approval at the time he sought the building permit. (CRMC Application).
A CRMC subcommittee, appointed to make recommendations to the full committee, held a hearing on May 27, 1987. Appellant and other interested parties submitted evidence both for and against the application. Two CRMC staff biologists filed a field report with the subcommittee, describing the land in question and the impact the deck has on the local ecosystem. (Biologist's Report).
Testimony during the hearing demonstrated that, despite appellant's description of the deck as an "observation deck" in the CRMC application, the Griscoms used the deck primarily for picnics and small parties. (Transcript at 24-26, 107-108, 123). Mr. Griscom also admitted that uninvited people often used the deck as a party sight, leaving various forms of refuse. (Transcript at 81, 107-108, 123).
To support its recommendation of removal of the deck, the biologists, in their report, noted that the deck failed to meet minimum setback requirements. (Section 140 of the Coastal Resources Management Program ["CRMP"]). Further, the deck represented a buffer zone violation under the CRMP, Section 150. The biologists stated in their report that the deck, as located, impeded growth of buffering vegetation. According to the report, buffer zones, such as the subject area, "are important potential nest sites for gadwall and other coastal pond wildlife." (Biologist's Report at 5). Finally, the biologists remarked in their report that the choice of location for an "observation deck" was questionable. Most observation decks, the report stated, are not located intrusively in the midst of the habitat but are set back from the wildlife to be observed. (Biologist's Report at 5).
The report concluded that because Maschaug Pond is a "Type 1 Conservation Pond" the Council should require the removal of the deck. This action, according to the report, would effectuate the CRMC's goal of protecting "Type 1 waters from activities and uses that have the potential to degrade scenic, wildlife and plant habitat values, or which may adversely impact water quality and the diversity of natural shoreline types." CRMP Section 200.1 (C)(1).
After hearing all the evidence, the subcommittee concluded that the deck was not in conformity with the CRMP. The subcommittee further found that the deck posed a threat to the surrounding environment. Therefore, the subcommittee recommended that appellant's application to maintain the deck be denied.
The full CRMC held a hearing on May 9, 1989, at which time the parties submitted additional evidence. The CRMC rendered its decision on October 12, 1989, denying appellant's application and ordering the removal of the deck. (CRMC decision at 3). The CRMC based its jurisdiction on § 46-23-6B, subsections (d) and (e). The decision stated, in the alternative, that by applying for CRMC approval, appellant submitted to CRMC jurisdiction. (CRMC decision at 2).
Appellant filed this appeal with the Superior Court on November 9, 1989. On April 4, 1990, Mr. Justice Needham granted a motion by the Watch Hill Fire District, Alice W. Hanson, and Edward Reardon, to intervene in this appeal and join the CRMC in defending the appeal.
Discussion
In an administrative appeal, pursuant to the Administrative Procedures Act, the court shall not "substitute, its judgment for that of the agency as to the weight of the evidence or questions of fact." R.I.G.L. (1991 Reenactment) § 42-35-15(g); Guarino v.Department of Social Welfare, 450 A.2d 425 (R.I. 1980). Even if the court were to view the evidence differently then the agency, the court must uphold the agency factual determinations if there exists any competent evidence to support their findings. BlueCross Blue Shield v. Caldarone, 520 A.2d 969, 972 (R.I. 1987)Berberian v. Department of Employment Security, 414 A.2d 480, 482 (R.I. 1980). The statute requires that a court reverse an agency if the findings of the agency are
 42-35-15. Judicial review of contested cases.
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
Section 42-35-15(g); Carmody v. Rhode Island Conflict ofInterest Commission, 509 A.2d 453 (R.I. 1989).
Appellant, in her brief, challenges the CRMC's decision on a number of grounds. First, appellant argues that the CRMC did not have jurisdiction and that furthermore, its decision was in excess of its authority. Second, appellant claims that the decision of the CRMC was clearly erroneous, arbitrary, and capricious.
Appellant's lack of jurisdiction argument has two components. First, appellant argues that R.I.G.L. § 46-23-6(B), which defines the extent of CRMC jurisdiction, does not cover Maschaug Pond or its adjacent lands (including appellant's property) because the pond is not a "tidal pond." Additionally, appellant asserts that the CRMP, which defines the extent of authority the CRMC has over land in its jurisdiction, does not forbid the construction of recreational decks.
CRMC, and the intervenors, respond with two arguments. The basis of the first argument is that appellant has misread both the CRMC statute and the CRMP. The CRMC asserts that § 46-23-6(B) gives them jurisdiction over appellant's property and that the CRMP does in fact prohibit appellant's construction of the deck. Alternatively, the CRMC argues that by applying for an assent, appellant consented to CRMC jurisdiction. Therefore, CRMC contends, appellant is estopped from raising the jurisdiction argument.
Under § 46-23-6(B), the jurisdiction of the CRMC is limited to that "necessary to carry out effective resource management programs." Section 46-23-6(B)(3). The CRMC has authority to
 Approve, modify, set conditions for, or reject the design, location, construction, alteration, and operation of specified activities or land uses when these are related to a water area under the agency's jurisdiction, regardless of their actual location. § 46-23-6(B)(3).
Pursuant to this statute, the CRMC has authority over "specified activities or land uses" only when "there is a reasonable probability of conflict with a plan or program for resources management or damage to the coastal environment." Id. Included among such land uses and activities are
. . . (d) shoreline protection facilities and physical graphical features, and all directly associated contiguous areas which are necessary to preserve the integrity of such facility and/or features.
 (e) coastal wetlands and all directly associated contiguous areas which are necessary to preserve the integrity of such wetlands. Id.
A "coastal wetland" is defined as a salt marsh bordering tidal waters "whether or not the tidal waters reach the littoral areas through natural or artificial water courses." Section 42-23-6(B)(3)(e) "Coastal wetlands" also include "uplands" which are contiguous to a salt marsh which are "necessary, to preserve the integrity of that marsh." Id. A marsh is defined to include areas which grow among other plant life, smooth cordgrass (spartina alterniflora), salt meadow grass (spartina patens), or narrow leaf cattail (typha angustifilia). Id.
The above passages of the statute demonstrate that appellant's contention that the CRMC lacks jurisdiction because Maschaug Pond is not a tidal pond is meritless. Both the Biologist's Report (at 1-2) and the CRMC Decision (at 1-2) refer to Maschaug Pond as a "salt marsh" or brackish marsh. Additionally, the Biologist's Report notes the presence of spartina alterniflora, spartina patens, and typha angustifolia at the site. (Biologist's Report at 2). Maschaug Pond is clearly a coastal wetland area under the statute. The fact that it is not a tidal pond is irrelevant.
Additionally, the Biologist's Report listed the actual site of the deck as three to five feet from the marsh at its closest and from ten to fifteen feet from the marsh at its farthest. (Id.). The evidence clearly demonstrates that the site of the deck is directly associated with and contiguous to the salt marsh, and necessary for its preservation. The site of the deck is therefore under CRMC jurisdiction. § 46-23-6(B)(3)(e). Alternatively, CRMC could have asserted proper jurisdiction pursuant to subsection (d) in that the area is contiguous to the shoreline which is necessary to preserve the integrity of shoreline physiographical features. Section 46-23-6(B)(3)(d).
The second part of appellant's jurisdictional argument is that the CRMP, which details the extent of the CRMC's authority under the statute, makes no mention of the authority over the construction of a deck in Section 3003A.1. This particular section regulates the construction of buildings for residential purposes in shoreline areas. Clearly appellant's deck is not for human habitation and would not be covered by section 300.3.A.1.
Appellant's deck can, however, be covered by other sections of the CRMP. Section 100.1.B requires the landowner to seek CRMC assent for any activity which "(1) has a reasonable probability of conflict with the Council's goals and its Management plans or programs, and/or (2) has the potential to damage the environment of the coastal region." As stated earlier, the Biologist's Report concluded that the deck conflicts with CRMC goals of protecting the scenic, wildlife and plant habitat values of the shoreline region and posed a threat to the Maschaug Pond environment. (Biologist's Report at 5; see CRMP section 200.1(c).
The CRMC also has jurisdiction over appellant's land pursuant to CRMP § 210.3(c)(3). This section prohibits "all alterations to salt marshes and contiguous freshwater or brackish marshes abutting Type 1 waters." This court is satisfied that the CRMC had jurisdiction over appellant's land. Accordingly, this court need not to decide whether appellant consented to the CRMC's jurisdiction by applying for permission to maintain the deck.
Appellant's final argument challenges the decision as clearly erroneous, arbitrary, and capricious. As stated above, this court's role in reviewing an agency decision is not to substitute its own judgment for that of the agency. Rather, this court must insure that the agency's decision is grounded upon the factual record. Section 42-35-15(g); St. Pius X Parish Corp. v. Murray,557 A.2d 1214, 1218 (R.I. 1989).
Appellant challenges no specific finding of the CRMC decision. She instead transforms her jurisdictional argument into an argument challenging the fact finding of the agency. Appellant claims that the agency was "clearly erroneous" and "arbitrary and capricious" in deciding that Machaug Pond is a tidal pond. Further, the agency erred, according to appellant, in ruling that the deck in question was a residential building.
These arguments are clearly meritless. The CRMC decision never refers to such findings. Rather, the CRMC, relying primarily on the Biologist's Report, found the following:
 3. Maschaug Pond Is a small brackish coastal pond with minimal flushing. . . .
 5. The shoreline at the site consists of a coastal wetland of approximately 10' wide, constituting primarily of high marsh. . . .
 9. The deck is simply a deck not connected to any residential structure . . .
 10. The facility does not meet FEMA flood regulations.
 11. The as built deck ranges from 3' to 5' from the fringe marsh and pond shoreline varying up to 10 to 15' from the pond.
(CRMC decision at 1-2).
After review of the entire record, this court is satisfied that the CRMC's decision was supported by reliable, probative evidence. The agency decision is amply supported by the evidence in the whole record, most notably the findings of the staff biologist concerning the deck and its threat to the Maschaug Pond environment. The CRMC properly exercised its jurisdiction pursuant to § 46-23-6(B) in denying appellant's application to maintain the deck.
The decision of the CRMC is hereby affirmed. Counsel shall prepare the appropriate order.
[1] Clement Griscom died on August 31, 1988, after the CRMC subcommittee hearing but before the final CRMC decision.