[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
This is an appeal from a decision of the Rhode Island Commission for Human Rights made and entered on March 2, 1990 pursuant to G.L. 1956 (1988 Reenactment) § 42-35-15.
AGENCY HISTORY
On November 18, 1987, Babajide Kufeji ("the applicant") filed a complaint against H.E.A., Inc. ("the employer") with the Rhode Island Commission for Human Rights ("the Commission"). The applicant alleged that the employer discriminated against him in hiring on the basis of the applicant's race (African-American), color (black), and ancestral origin (Nigeria).
On May 18, 1989, a hearing on the complaint was held before the Commission. On March 2, 1990, the Commission entered its decision and order, concluding that "[t]he [employer] discriminated against the [applicant] because of his race, color and ancestral origin with respect to discriminatory treatment and refusal to hire in violation of Rhode Island General Laws chapter 28-5." (Decision and Order, at 5.)
In its decision and order, the Commission made the following findings. In September of 1987, pursuant to an advertisement, the applicant applied for a truck driving job with the employer. By virtue of having a "class 3" driver's license, which makes one eligible to drive virtually any vehicle, the applicant qualified for the job. His application made it readily apparent that the applicant was black and reasonable to conclude that he was foreign born. The applicant was given no reply at that time, nor soon thereafter. After again seeing the employer's advertisement in the newspaper, this time with an additional truck driving opening for which the applicant was even more suited, the applicant returned to the job site. Upon returning to the job site, the employer's hiring manager told the applicant that there were no jobs for him, despite the applicant's unequivocal and unqualified assertion that he would take any driving job at all. Because of this caustic treatment of the applicant, the applicant's wife (whose voice does not reflect her husband's noticeable accent) called the company herself in order to see whether in fact no jobs were available. Ironically, she was told by the employer that there were, in fact, jobs available to her. (Decision and Order, at 2-3.)
The Commission made additional findings regarding the employer's motive for refusing to hire the applicant. After the applicant was refused employment, the employer hired many people, virtually all of whom were Caucasians, for truck driving positions identical to those requested by the applicant. Moreover, there is a very high turnover at the company for these jobs. Additionally, the Commission found that the employer's stated reason for refusing employment — that class 3 drivers were overqualified and thus would leave their employ upon finding a better job — was merely a pretext for unlawful discriminatory motives. (Decision and Order, at 3-8.)
In short, then, the Commission found that jobs were available for which the applicant was qualified. It thus concluded that the employer refused to hire the applicant on the basis of his ethnicity.
The employer has appealed the Commission's decision to this Court, contending that the Commission's decision was predicated upon both error of law and unsubstantiated factual conclusions.
ANALYSIS
Rhode Island General Laws 1956 (1988 Reenactment) § 42-35-15
provides for the judicial review of contested agency decisions:
 42-35-15. Judicial review of contested cases.
 (g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions; (2) In excess of the statutory authority of the agency; (3) Made upon unlawful procedure; (4) Affected by other error of law; (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
This decision will first determine whether the record contains legal error. It then addresses the Commission's factual conclusions. Finally, it will consider the propriety of the Commission's order and remedies.
General Laws 1956 (1988 Reenactment) § 28-5-7(1)(A) states that "[i]t shall be an unlawful employment practice . . . [f]or an employer . . . [t]o refuse to hire an applicant for employment because of his or her race or color, religion, sex, handicap, age, or country of ancestral origin." In a complaint under this section, the Commission must apply the standard set forth inMcDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and Texas Department of Community Affairsv. Burdine, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Newport Shipyard, Inc. v. Rhode Island Commission forHuman Rights, et al., 484 A.2d 893 (R.I. 1984).
Under the foregoing case law, in order to prove a prima facie case of § 28-5-7(1)(A) employment discrimination, a job applicant must prove that: (1) he was a member of a racial minority; (2) he was qualified for the job; (3) his application was rejected; and (4) after this rejection the job remained open to persons of similar qualifications. See McDonnell Douglas, supra, 411 U.S. at 802.
Once this prima facie case is established by a preponderance of the evidence, the employer may rebut it "by producing clear and reasonably specific evidence" that there was a legitimate reason for rejection. Newport Shipyard, supra, 484 A.2d at 898. If thus rebutted, the applicant may then prove by a preponderance of the evidence "that the employer's expressed justification [was] actually a mere pretext for discriminatory employment practices." Id. This is done either by persuading the Commission that the discriminatory reason was the more likely reason for rejection or by persuading the Commission that the proffered reason is incredible. Id.
The McDonnell Douglas/Burdine/Newport Shipyard analysis is precisely the one that was applied by the Commission to the merits of the applicant's complaint. It remains to be considered, however, whether the Commission's factual conclusions (made in order to answer the foregoing issues) were reasonable.
The strong language of G.L. § 42-35-15 indicates that judgments as to questions of fact (such as those necessary to answer the Newport Shipyard issues) are left to the sound discretion of the Commission. This court's judicial review is primarily limited to questions of law. St. Pius X Parish Corp.v. Murray, 557 A.2d 1214, 1218 (R.I. 1989). Indeed, only if the Commission's factual determinations and concurrent credibility judgments are unsupported by "substantial evidence" within the record may this court refuse to accept them. "Substantial evidence" is that which a reasonable mind might accept to support a conclusion, i.e., more than a scintilla of competent evidence.Newport Shipyard, supra, 484 A.2d at 897.
Considering the foregoing standard of review, this Court affirms the factual conclusions made by the Commission. Far more than a mere scintilla of the competent evidence supports the Commission's decision that this was a case of unlawful discrimination.
The Commission summarily concluded that the applicant met his prima facie burden. (Decision and Order, at 5.) This is easily justifiable. First, it is uncontested that the applicant is a member of a racial minority. Second, the applicant was overqualified for the position he initially applied for (despite the employer's exhortations to the contrary, being overqualified for a position does in fact make that person qualified for the position), and he was qualified for positions open at the time of his return to the employer's office. Third, he was denied employment. Finally, after this denial Caucasians were hired to perform the same jobs.
As for the employer's attempt to rebut this prima facie evidence, the Commission determined that it succeeded in articulating a legitimate, non-discriminatory reason for its actions. The employer's purported non-discriminatory motive for rejecting the applicant for the "class 2" position originally applied for was that the employer routinely ignored applicants with "class 3" licenses who applied for "class 2" positions because of the greater likelihood of turnover. (Decision and Order, at 5.)
However, the crux of the Commission's discrimination determination was its conclusion that the employer's foregoing justification was actually a mere pretext for discriminatory employment practices. (Decision and Order, at 6-8; see NewportShipyard, supra, 484 A.2d at 898.) Basically, the Commission found the purported reason for the original rejection highly unlikely. Moreover, the Commission felt that the second trip to the office clearly amounted to another employment application and, as there were one or more "class 3" positions open at that time, the purported justification thus became even more incredible.
There is substantial evidence to support this conclusion. Most of this evidence relates to the applicant's return to the workplace upon seeing the additional advertisements in the newspaper after his apparent rejection. For example, the applicant testified that upon this return he made it perfectly clear to the hiring manager that he would take any job available. The employer, on the other hand, proffered virtually no credible proof that the applicant's return should not have been deemed a reapplication, regardless of whether the applicant literally filled out an additional application form.
Further, the applicant testified that racist remarks were made with reference to him when he returned to check on his application status and that he was treated in a derogatory manner. Moreover, the applicant's spouse contacted the employer to see about the very same jobs sought by the applicant. Like her husband, she did not qualify her job request, but rather simply asked to be employed as a truck driver. However, contrary to the disfavorable treatment afforded to her husband, she was encouraged to seek employment.
This evidence clearly swayed the Commission, and there is no reason to question that result. The foregoing evidence is just some of the "substantial evidence" supporting the Commission's decision.
Admittedly, there is some evidence to support the employer's position. Perhaps, for instance, the applicant's return to the employer's office could have been found to be a reapplication. Perhaps the employer's witnesses could have been found to be believable. But, the Commission determined the opposite. In the end, the applicant's evidence was persuasive to the Commission while the employer's was not. Provided there is more than a scintilla of competent evidence (which there is) it is not the role of this Court to question such judgment calls. Indeed, there being substantial evidence to support the decision, this Court is without jurisdiction to set aside the Commission's factual findings. The record indicates that the Commission was not clearly erroneous, acted neither arbitrarily nor capriciously, nor abused its discretion in its application of the facts of this case to the correct standard of law.
Finally, the employer questions the propriety of the Commission's remedies. It contends that the order was made without lawful authority and thus that the record should be, at a minimum, remanded for revision or clarification. See Employer's Brief, at 17-19. This Court disagrees.
The Commission ordered the employer to cease and desist from further unlawful discrimination. Further, it ordered the employer to offer to the applicant the next available position and to remunerate the applicant with the back-pay and benefits, plus interest, corresponding to the part-time tractor trailer position available at the time of the applicant's second appearance at the employer's work place. (Decision and Order, at 8-10.)
General Laws 1956 (1981 Reenactment) § 28-5-24 states that upon finding unlawful discrimination, the Commission may
 issue and cause to be served on the respondent an order requiring the respondent to cease and desist from such unlawful employment practices, and to take such further affirmative or other action as will effectuate the purposes of this chapter, including, but not limited to hiring, reinstatement, or upgrading of employees with or without back pay, or admission or restoration to union membership, including a requirement for reports of the manner of compliance. Back pay shall include the economic value of all benefits and raises to which an employee would have been entitled had an unfair employment practice not been committed, plus interest on such amounts.
The Commission's order is a virtually verbatim recitation of the foregoing legislation. Thus, it does not appear that the the Commission could have more appropriately effectuated the letter and spirit of the law, which encourages the prevention of future unlawful discrimination as well as the remedying of past discrimination.
The employer contends, however, that it is "impossible" to follow the Commission's mandate because it does not specify the position or the salary or the exact benefits referred to. This argument is disingenuous. The order makes it clear that the Commission determined that the applicant should receive remuneration and benefits corresponding to the part-time tractor trailer, i.e., "class 3", position available at the time of the applicant's second visit to the workplace.
That the exact amount of renumeration is not delineated in the order does not affect its propriety. It is for the employer to determine these figures and distribute the benefits accordingly. Clearly, the Commission's primary function is to determine whether there has been discrimination and, if so, then to fashion a remedy that puts the onus of remedying that discrimination on the employer. This is precisely what was done. The employer more than anyone else is readily capable of ascertaining the benefits and compensation missed by the applicant over these months and remunerating him accordingly.
For the foregoing reasons, this Court affirms the decision of the Commission for Human Rights in all respects. An order shall be presented for entry within two weeks.