[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
These are two appeals by the Woonsocket School Committee from two decisions and Orders of the Rhode Island State Labor Relations Board. By previous Order of the Superior Court, both appeals were consolidated for decision. Jurisdiction in this Superior Court is pursuant to § 42-35-15 R.I.G.L.
I
CASE TRAVEL — FACTS
On September 1, 1989 the Woonsocket School Committee (Committee) entered into a collective bargaining agreement with the Woonsocket Teachers Guild, Local 951, American Federation of Teachers Congress of Industrial Organizations (Union). In that agreement, which was for a period of three years, expiring on August 31, 1992, the Committee and the Union each acknowledged the Committee's "sole right to operate the school system and that all management rights repose in it and the administration but that such rights must be exercised consistently with the other provisions of this agreement. (Agreement 3-2.03) One of those other provisions in the agreement provides that the Committee agreed to negotiate with the Union any revision in wages, hours, working conditions and existing contractual items prior to implementing any such revisions. (Agreement, 3-2.05)
In that background, during the existence of the agreement, the Committee in the course of preparing its proposed budget for the 1991-1992 fiscal year was confronted with the reality of a substantial reduction in State Aid to Education funds. Accordingly, in order to fashion a non-deficit budget proposal, the Committee decided to abolish various professional and non-professional positions; reduce full-time positions to part-time positions and eliminate or reduce numerous employee fringe benefits and services. The total budget cuts and reductions, for both professional and non-professional employees totalled some $1,425,893.00.
The Committee's budget proposals were submitted to the full Committee for consideration on May 1, 1991, and unanimously approved, with only minor revisions.
Following the Committee's approval of the 1991-1992 fiscal year school budget, the Union and the Committee met informally after May 1, and prior to June 26, 1991 to discuss possible solutions to the financial dilemma and avoid the abolishment of certain positions and work reduction schedules for others. Unfortunately, little resulted from the informal discussions and on June 26, 1991 the Committee gave its final approval for abolishing the various professional and non-professional positions and for work schedule reductions in others. The Union, while conceding that the Committee's ultimate management fiscal control action was authorized under 3-2.03 in the Collective Bargaining Agreement, it disputed, however, relying on 3-2.05
in that Agreement the Committee's right to do so, unilaterally, without first negotiating and bargaining in good faith over the position eliminations and work schedule reductions with the Union. As a result, the Union filed three unfair Labor practice charges with the State Labor Relations Board pursuant to §28-9.3-4 R.I.G.L. Two of the multiple charges ("U.L.P." 4525 and 4526) came about because of the Union's separate contractual representation of teachers within the bargaining unit along with para-professionals within the same unit. The third charge ("U.L.P." 4618) concerned the proposed elimination of certain total or entire classifications of bargaining unit member positions such as Junior High School Department Heads; coaches and extra-curricular program personnel; all of which had been previously specifically negotiated into the collective bargaining agreement.
"U.L.P." charge 4525 relating to the Union's representation of the school teachers and "U.L.P." 4526 relating to the Union's representation of para-professionals each alleged violations of §28-7-13 R.I.G.L. by the Committee because of its failure to first negotiate the position abolishments with the Union in accordance with the requirements of § 28-7-13(6) and (10) R.I.G.L.
The Union and the Committee agreed that the Board could consolidate both charges ("U.L.P." 4525, 4526) for hearing, which it did.
An informal conference between the parties and a Board representative was held on January 23, 1992 in hopes of resolving the dispute but proved fruitless. The Board then conducted the required investigation of the charges and on August 14, 1992 issued its unfair labor practice complaint against the Committee. On that complaint, the Board scheduled and conducted the required hearing. Thereafter, the Board found on "U.L.P." 4525 and "U.L.P." 4526 that the Committee had failed to negotiate in good faith with the Union with regard to the abolishment of the various teacher and para-professional positions and with regard to the restructuring of a number of other positions from full time to part-time status. Specifically, the Board found that the Committee's May 1, 1991 adoption of the "F.Y. 92 budget reductions", without first negotiating same with the Union constituted a refusal on the part of the Committee to bargain in good faith as required by § 28-7-13(6) and (10) R.I.G.L. From that decision dated November 3, 1993, appeal to this Superior Court followed. That appeal is C.A.P.C. 93-6543.
The remaining and consolidated appeal before this Court isC.A.P.C. 93-6998. That appeal concerns the Board's December 3, 1993 decision on "U.L.P." 4618 which pertained to the Committee's elimination of certain classifications of bargaining unit member employees such as Junior High School Department Heads; coaches and extra-curricular program personnel, all of which had been previously specifically negotiated into the collective bargaining agreement between the Committee and the Union.
Once again, as in the earlier discussed unfair labor charges ("U.L.P." 4525 and 4526) the Committee contends that because of its encountered state funding shortfall, it had no alternative but to eliminate certain employee positions, including entire job classifications, if necessary, in order to adopt a non-deficit realistic annual budget. It once again refers to, and relies upon the sole management rights clause in the collective bargaining agreement. (3-2.03)
The Board after its hearing on "U.L.P." 4618 found, however, that the Committee, contrary to its collective bargaining agreement provision (3-2.05), unilaterally notified the Department Head Junior High School; the coaches and the extra-curricular program employees of the elimination of their positions without first negotiating the eliminations of those classifications and positions with the Union as required by3-2.05. That failure to negotiate was found by the Board to be an unfair labor practice in violation of § 28-9.3-2 R.I.G.L. and consequently in violation of § 28-7-13(6) and (10). That Board decision was, as noted earlier, entered on December 3, 1993, and the Committee's appeal is C.A.P.C. 93-6998.
II
APPELLATE REVIEW PURSUANT TO § 42-35-15 R.I.G.L.
This Court's appellate jurisdiction is clearly delineated in § 42-35-15 R.I.G.L. It cannot substitute its judgment on questions of fact previously determined by the defendant agency or board. Costa v. Registrar of Motor Vehicles, 543 A.2d 1307
(R.I. 1988); Lemoine v. Department of Public Health,113 R.I. 285, 291 (1974). That is so, even where after reviewing the certified record the Court might be inclined to view the evidence differently that did the agency or board. Cahoone v. Board ofReview, 104 R.I. 503, 506 (1968). If there is any legally competent evidence in the certified record that supports the agency or board's decision, this Court is required to uphold and affirm the factual determinations made upon that evidence.Liberty Mutual Ins. Co. v. Janes, 586 A.2d 536, 537 (R.I. 1991); St. Pius X Parish Corp. v. Murray, 557 A.2d 1214 (R.I. 1989); Costa v. Registrar of Motor Vehicles, 543 A.2d 1307
(R.I. 1988); Sartor v. Coastal Resources Mgt. Council,542 A.2d 1077 (R.I. 1988); Prete v. Parshley, 99 R.I. 172, 176 (1965). Judicial review, except in cases where the agency or board's factual findings are completely bereft of competent evidentiary support in the record, is limited to questions of law. St. PiusX Parish Corp. v. Murray, 557 A.2d 1214 (R.I. 1989).
III
THE CERTIFIED RECORD
In these consolidated appeals, the certified record of the proceedings before the Board reveals rather clearly the existence of the basic state aid money shortfall problem encountered by the Committee when planning its 1991-1992 fiscal year budget. It reveals with the same clarity the problem generated therefrom which confronted the Union when it learned that many of its union employees would be losing their jobs and employment. The certified record thereafter also clearly discloses how the Committee and the Union reacted to their particular problem. Indicative of what transpired is perhaps best revealed by the quite candid testimony of Ann Flood, the President of the Woonsocket Teachers Guild, who testified in the course of the Board hearing on "U.L.P." 4618. She testified (tr. p. 8-25) that when the state aid shortfall problem surfaced and the Committee later on May 1, 1991 voted to adopt the position eliminations and work reductions as the only solution, that informal discussions relating to the problem thereafter took place between the Union and the Committee from May 2 to June 26, 1991. However, as she correctly noted, those discussions were never intended to be, nor did they ever measure up to or become good faith negotiations. (tr. p. 24) Under the terms of the collective bargaining agreement between the parties, 3-2.05
certainly, and clearly called for both sides to sit down with each other and to negotiate the Committee's money shortfall solution proposals being advanced by the Committee. The Committee in its appeals here appears to have misconceived the real thrust of the Board's November 3 and December 3, 1993 decisions. In each of those decisions, the Board was neither unmindful nor unsympathetic to the financial plight and dilemma that confronted the Committee when it began to plan for its 1991-1992 fiscal school year budget. The Board did not overlook the final managerial rights of the Committee as contained in 3-2.03 of the collective bargaining agreement. The Board simply recognized that 3-2.05 in the same agreement also required the parties to that agreement to negotiate in good faith "any revision in wages,hours, working conditions, and existing contractual items . . .prior to any implementation." Perhaps had any such good faith negotiations taken place, alternative suitable solutions could have been discovered or agreed upon. Whether such could have been accomplished will never be known because negotiations never took place. The Board in its November 3, 1993 decision (C.A.93-6543) and in its December 3, 1993 decision (C.A. 93-6998) concluded and found that the Committee's failure to negotiate in good faith, the position, job, classification elimination and work schedule changes it proposed, prior to implementing those proposals constituted an unfair labor practice in violation of §28-7-13(6) and (10) R.I.G.L. The certified record of the proceedings before the Board contains more than the required substantial evidence therein to support the Board's findings and conclusions. Accordingly, this Court must, and does, deny and dismiss the Committee's appeals in C.A. 93-6543 and C.A.93-6998.
Counsel shall prepare judgments for each of the above cases and submit same for entry by the Court within ten (10) days.