RICHARD MATTSON, Plaintiff-Appellant, *v.* THE DEPARTMENT OF LABOR *et al.,* Defendants-Appellees.

Fourth District   No. 4—83—0139

Opinion filed October 13, 1983.

Gerald G. Kaluzny, of Prairie State Legal Services, Inc., of Bloomington, for appellant.

William B. Lawrence, of Bloomington, for appellee Brokaw Hospital.

Neil F. Hartigan, Attorney General, of Springfield (Thomas P. Marnell, Assistant Attorney General, of counsel), for other appellees.

JUSTICE TRAPP delivered the opinion of the court:
In a final administrative decision, the Board of Review found that Richard Mattson was disqualified from receiving unemployment insurance benefits from October 18, 1981, until he requalified for benefits under the provisions of section 602(A) of the Unemployment Insurance Act. (Ill. Rev. Stat. 1981, ch. 48, par. 432(A).) Mattson filed this action seeking administrative review of that decision under article III of the Code of Civil Procedure. (Ill. Rev. Stat. 1981, ch. 110, par. 3—101 *et seq.*) The circuit court of McLean County affirmed. We affirm.

Mattson was a maintenance employee at Brokaw Hospital. During the early morning hours of Saturday, August 29, 1981, Mattson appeared on the employer's premises while under the influence of alcohol. Although this appearance occurred during his off-duty hours, he was warned on September 3 that he would be terminated if there was another such incident.

Another incident occurred on September 30, 1981. The plaintiff worked that day replacing floor tile in the dietary department. After leaving work at 3:30 p.m., he played pool and drank beer. He was joined by another hospital employee, Dennis Shoemaker. According to

plaintiff, Shoemaker was going to work that night and asked to be shown what needed to be done in the dietary department. Around 9:30 p.m., several other employees found plaintiff and Shoemaker in the kitchen of the hospital's dietary department. The plaintiff's hasty exit was observed by a security guard. Meat was sitting outside a food locker and the freezer had allegedly been tampered with. On the following day, the plaintiff was arrested at work on a theft charge stemming from his presence in the dietary department the previous night. He was advised that he would not be allowed to return to work pending the outcome of the court action.

On October 18, 1981, plaintiff filed an application for unemployment insurance benefits. The employer timely notified the unemployment insurance office of plaintiff's possible ineligibility for benefits, indicating that he was suspended from duty on October 1, pending investigation and disposition of findings connected with the alleged theft from the employer.

On January 22, 1982, Mattson was tried and acquitted by a jury on the theft charges. Several days later he was told that he could not return to work pending an internal investigation. On February 9, 1982, plaintiff was discharged for failure to cooperate in the employer's internal investigation.

On February 18, 1982, a claims adjudicator's determination issued finding plaintiff disqualified from benefits from October 18, 1981, through February 6, 1982, and thereafter until he requalified for benefits. The basis of the disqualification was stated as follows:

"On September 30, 1981, the claimant was discharged from Brokaw Hospital due to an allegation of theft by his employer. Although the claimant denies the allegation of theft, he admits to being in an unauthorized area outside of his usual working hours under the influence of alcohol. The claimant's actions were a disregard for his employer's best interest. The claimant *was discharged for misconduct connected with his work.*" (Emphasis added.)

The plaintiff appealed this determination and a hearing was conducted before a hearings referee on March 3, 1982.

On March 9, 1982, the referee's decision issued. The referee affirmed the determination of the claims adjudicator. He found Mattson was suspended on October 1, 1981, pending investigation and outcome of the theft arrest. He stated that Mattson had a prior warning about appearing on the employer's property after drinking and that he understood and disregarded the warning. The referee concluded that Mattson was discharged for misconduct in connection with his work.

The plaintiff appealed the referee's decision. On July 16, 1982, the Board of Review filed a final administrative determination affirming the referee's decision. The Board made several statements which form the basis of plaintiff's appeal: (1) Mattson was prosecuted for theft and was placed on a leave of absence pending the outcome of his trial; (2) Mattson was discharged for his refusal to cooperate with the employer in an investigation of the incident; and (3) his refusal to participate in the investigation was, under the circumstances, misconduct within the meaning of the Unemployment Insurance Act.

Plaintiff urges that the Board of Review erred as a matter of law by disqualifying him from benefits from the date of his discharge, February 9, 1982, to the date of his application for benefits, October 18, 1981. Defendants contend that the plaintiff's suspension for misconduct on October 1, 1981, was tantamount to a discharge and that, therefore, he was properly denied unemployment benefits beginning October 18, 1981.

First, we do not consider this situation, where the employee wished to work but was not allowed to work by the employer, to be a leave of absence. Second, we rely on the underlying finding of the claims adjudicator and the hearings referee that the employer's action regarding the plaintiff in October 1981 was a suspension for misconduct; the record supports that finding.

■ The agency's policy is that a suspension from work for a period of seven or more consecutive days, or of indefinite duration, is a discharge. Whether a suspension constitutes a discharge for misconduct connected with work is decided by principles generally applicable to discharges. We find that this is a reasonable interpretation of the language of section 602(A) disqualifying those discharged for misconduct. Contra, *Matson Terminals, Inc. v. Hasegawa* (1973), 54 Haw. 563, 512 P.2d 1, and *National Airlines, Inc. v. Division of Employment Security* (Fla. App. 1980), 379 So. 2d 1033, wherein the agencies interpreted statutory language to exclude suspension as a disqualifying factor and reviewing courts upheld the agency view.

■ ■ Although section 602(A) is not ambiguous on its face, its literal application leads to an ambiguous practical result. If discharge is not read to include suspension, an employee could be compensated for unemployment caused by work-connected misconduct where his employer chooses not to impose the harsher punitive measure of final termination. Courts will give substantial weight and deference to an interpretation of an ambiguous statute by the agency charged with its administration and enforcement. (*Illinois Consolidated Telephone Co. v. Illinois Commerce Com.* (1983), 95 Ill. 2d 142, 152, 447 N.E.2d 295,

300.) In this case, the agency policy of including suspension within the term "discharge" for the purpose of benefits disqualification does not extend the statute beyond its fair and reasonable meaning.

Further, the agency's policy does not appear to be contrary to the administration of the unemployment compensation program in other States. Nineteen States specify by statute that a suspension for misconduct or a disciplinary layoff is a disqualification for unemployment benefits. (Ala. Code sec. 25—4—78(3)(c), (d) (1975 & Supp. 1982); Fla. Stat. Ann. sec. 443.101(1)(b) (1981 & West Supp. 1983); Ga. Code Ann. sec. 54—610(b) (1982); Hawaii Rev. Stat. sec. 383—30(2) (1976 & Supp. 1982); Me. Rev. Stat. Ann. tit. 26, sec. 1193(2)(A) (West Supp. 1982-1983); Md. Ann. Code art. 95A, sec. 6(c) (1979); Mass. Ann. Laws ch. 151A, sec. 25(f) (Michie/Law Coop. (1976)); Mich. Comp. Laws Ann. sec. 421.29(1)(b), (9) (West 1978 & Supp. 1982-1983); Minn. Stat. Ann. sec. 268.09(1)(6) (West Supp. 1983); Mo. Ann. Stat. sec. 288.050(2) (Vernon 1965 & Supp. 1983); N.H. Rev. Stat. Ann. sec. 282:4(L) (1977); N.J. Stat. Ann. sec. 43:21—5(b) (West Supp. 1983-1984); Ohio Rev. Code Ann. sec. 4141.29(D)(1)(b) (Page 1980 & Supp. 1982); Or. Rev. Stat. sec. 657.176(2)(b) (1981); Pa. Stat. Ann. tit. 43, sec. 802(e) (Purdon 1964); S.D. Codified Laws Ann., sec. 61—6—14 (1978 & Supp. 1982); Wash. Rev. Code Ann. sec. 50.20.060 (1962 & Supp. 1983-1984); Wis. Stat. Ann., sec. 108.04(6) (West 1974).) One State's statute phrases a disqualification to encompass any employer action based upon an employee's misconduct. N.Y. Labor Law sec. 593(3) (McKinney 1977).

■ The generally accepted definition of misconduct has been stated as follows:

> "[T]he intended meaning of the term 'misconduct,' *** is limited to conduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good-faith errors in judgment or discretion are not to be deemed 'misconduct' within the meaning of the statute." (*Boynton Cab Co. v. Neubeck* (1941), 237 Wis. 249, 259-60, 296 N.W. 636, 640.)

(See *Granite City Steel v. Board of Review* (1979), 68 Ill. App. 3d 264, 385 N.E.2d 931.) The record supports the administrative finding of misconduct by plaintiff on September 30, 1981.

Affirmed.

WEBBER, P.J., and GREEN, J., concur.