Donald TURNER

v.

DEPARTMENT OF EMPLOYMENT
SECURITY, BOARD OF REVIEW.

No. 82–45–M.P.

Supreme Court of Rhode Island.

Aug. 1, 1984.

James Murray, Pawtucket, for petitioner.

Stephen R. Lewinstein (Legal Counsel for Board of Review), Providence, for respondent.

## OPINION

KELLEHER, Justice.

This is a petition for certiorari filed pursuant to the Administrative Procedures Act, G.L. 1956 (1977 Reenactment) § 42–35–16, to review a District Court judgment that affirmed the decision of the Rhode Island Department of Employment Security, Board of Review (board), denying unemployment benefits to the petitioner, Donald Turner (Turner). After reviewing the record, we affirm.

Turner was employed as a Plan Review and Code Compliance Officer by the State Fire Marshal's office under the Division of Fire Safety (division). Apparently, part of his official duties involved ensuring that certain doors used in various types of construction were approved as "fire doors." A "fire door" is one that meets certain requirements of the State Fire Code in regard to its ability to withstand heat for minimum time periods. An approved door bears a label or "tag" indicating that fact.

In early December 1976 Earl Shannon (Shannon), another member of the State Fire Marshal's staff, received a telephone call from a deputy fire chief. The caller reported that he had received a complaint that Turner was "selling tags" during the

course of his duties. Although the record does not indicate what "selling tags" constitutes, we assume it means Turner was selling "approved" labels to unscrupulous builders who were then affixing them to unapproved doors. Shannon immediately discussed the call with Robert J. Voas, then State Fire Marshal, who referred the matter to the Rhode Island State Police. Turner was arrested shortly afterward and charged with two misdemeanors: (1) obtaining money under false pretenses, in violation of G.L. 1956 (1981 Reenactment) § 11–41–4, and (2) failing to fulfill the duties of his office conscientiously, in violation of G.L. 1956 (1969 Reenactment) § 36–4–55.

After Turner was arrested, he took a leave of absence from the division beginning on December 18, 1976. On March 15, 1977, he was tried on both charges before a District Court justice, found guilty, and fined $200 and costs. On the same day he appealed both convictions to the Superior Court, seeking a trial de novo. On May 13, 1977, he pleaded nolo contendere to both charges, was placed on unsupervised probation for one year, and was ordered to make restitution.

While the wheels of our criminal justice system were steadily turning, Turner resigned from the division in March 1977, under threat of dismissal. He filed a claim for unemployment benefits on September 8, 1977. The director of the Department of Employment Security denied the claim on September 14, 1977, citing G.L. 1956 (1979 Reenactment) § 28–44–18. That section provides in part that "[a]n individual who has been discharged for proved misconduct connected with his work shall thereby become ineligible for benefits * * *." The director stated in his decision that "[a]n individual who is terminated because his actions are detrimental to the employer's best interest is separated under disqualifying circumstances." He went on to say that because Turner had been terminated on account of a job-related incident, his actions were necessarily not in his employer's best interest.

Turner appealed the director's decision to a referee, who took testimony at hearings on October 19 and November 10, 1977. On November 23, 1977, the referee issued a written decision sustaining the director's denial of benefits.

Turner appealed the referee's decision to the board. After hearing arguments from both sides, the board upheld the referee's decision on October 4, 1978. The board relied almost exclusively on *Bromley v. Board of Review of Department of Employment Security*, C.A. 72–401 (1972), an unreported Rhode Island Superior Court decision discussing "misconduct" in the context of § 28–44–18.

Turner then appealed the board's decision to the District Court. The parties submitted the case on memoranda of law, and the trial justice entered judgment on January 8, 1982, affirming the board. In his decision the trial justice noted that the phrase "proved misconduct" in § 28–44–18 had yet to be defined.[1] He then adopted a definition of misconduct that has been widely used in unemployment-insurance cases in other jurisdictions. This definition, which originated in *Boynton Cab Co. v. Neubeck*, 237 Wis. 249, 296 N.W. 636 (1941), is as follows:

> " '[M]isconduct' * * * is limited to conduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the

1. This court has since defined "misconduct" under G.L. 1956 (1979 Reenactment) § 28–44–18 but only in one context. In *Ranone v. Department of Employment Security*, R.I., 474 A.2d 748 (1984), we held that when air traffic controllers engaged in a strike prohibited by federal statute, their actions constituted misconduct as a matter of law.

employer's interests or of the employee's duties and obligations to his employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good faith errors in judgment or discretion are not to be deemed 'misconduct' within the meaning of the statute." *Id.* at 259–60, 296 N.W. at 640.[2]

The District Court justice held that the fact that Turner was criminally charged with work-related offenses and found guilty in District Court, appealed to the Superior Court where he pleaded nolo contendere, and was placed on probation and ordered to make restitution was sufficient to constitute "proved misconduct" under § 28–44–18.

In reviewing cases such as this one arising under the Administrative Procedures Act, judicial review is limited to questions of law based on the record that was before the District Court. *Powell v. Department of Employment Security*, 477 A.2d 93 at 95–96 (R.I.1984); *Ranone v. Department of Employment Security*, R.I., 474 A.2d 748, 750 n.5 (1984). We do not weigh the evidence but look only to see whether or not there exists in the record any legally competent evidence to support the decision under review. *Berberian v. Department of Employment Security*, R.I., 414 A.2d 480 (1980).

The sole issue before us is Turner's claim that his Superior Court plea of nolo contendere did not constitute sufficient, competent evidence for a finding of disqualification before the board. He argues that under a line of cases most recently affirmed in *Korsak v. Prudential Property & Casualty Insurance Co.*, R.I., 441 A.2d 832 (1982), a nolo plea is not admissible in evidence in a subsequent civil suit on the same matter as an admission of guilt or as proof that the defendant committed the offense.

In addition to our duty to affirm the board's decision if any legally competent evidence exists to support it, we are also guided by a legislative pronouncement concerning judicial review of the board's decision. General Laws 1956 (1979 Reenactment) § 28–44–54 states that

"[t]he jurisdiction of the reviewing court shall be confined to questions of law, and, in the absence of fraud the findings of fact by the board of review, if supported by substantial evidence regardless of statutory or common law rules, shall be conclusive."

Furthermore, § 28–44–54's mandate is significant because the board is exempt by the provisions of § 42–35–18(b)(1) from the provisions of §§ 42–35–9, –10, –11, –12, and –13 of the Administrative Procedures Act. Section 42–35–10(a) specifies that "the rules of evidence as applied in civil cases in the superior courts of this state shall be followed * * *." We believe that the language of § 42–35–18(b)(1) clearly allows the board, acting by reason of § 28–44–18, to consider Turner's plea[3] as evidence that he was guilty of the misconduct which

---

**2.** This rule has been followed in many other jurisdictions. *Mattson v. Department of Labor*, 118 Ill.App.3d 724, 74 Ill.Dec. 248, 455 N.E.2d 278 (1983); *Swanson v. Columbia Transit Corp.*, 248 N.W.2d 732 (Minn.1976); *Perske v. Job Service North Dakota*, 336 N.W.2d 146 (N.D.1983); *Willard v. Employment Security Department*, 10 Wash.App. 437, 517 P.2d 973 (1974); *see* Annot., 26 A.L.R.3d 1356 (1969).

**3.** Parenthetically, an examination of the transcript of the trial justice's remarks when he was informed that Turner was changing his plea to the charges pending against him indicates that Turner was asked if he was present when the trial justice explained the nature and conse-

quences of the nolo plea and the rights he was surrendering. Turner answered, "Yes, sir." The transcript as to the trial justice's admonition to those who might be pleading nolo indicates that the trial justice touched all the bases, but it is of great import that he specifically explained to those about to plea that

"when someone pleads nolo, they are telling me that they are guilty of the offense charged and that if they went to trial that the State would have an air-tight case which they could very easily prove as to all essential elements to the particular charge."

The judge's obligation under Rule 11 of the Superior Court Rules of Criminal Procedure is

caused him to take a leave of absence in December 1976.

The purpose of employment-security benefits is clearly expressed in G.L. 1956 (1979 Reenactment) § 28-42-2, and the benefits are designed to protect against the ill effects of unemployment that occurs in depressed economic times. The Legislature stated that since neither employers nor employees have control over their plights in such situations, the benefits are therefore designed to provide stability during these periods.

Section 28-44-54 is compatible with this purpose. Before the board grants or denies benefits to an individual, it should have the broadest range of evidence before it and not be constrained by the judicial or Administrative Procedures Act evidentiary rules. This breadth of evidence should be equally applicable when an individual attempts to take advantage of the limited use of a nolo contendere plea in a subsequent civil proceeding. Clearly, the board was correct to consider Turner's admitted wrongdoing and deny him benefits pursuant to § 28-44-18.

The petition for writ of certiorari is denied, and the judgment appealed from is affirmed.

to determine whether the plea is made voluntarily with an understanding of the nature and consequences of the charge as well as the necessity of being satisfied that there is a factual basis for the plea.