[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
This case is before this court on appeal from a decision by the Rhode Island Department of Human Services (DHS) denying plaintiff's request for financial assistance for postsecondary education during the 1991-1992 academic year. Plaintiff seeks a reversal or modification of the DHS decision and further requests any additional relief as is deemed just, including an award of attorney's fees. Jurisdiction in this Superior Court is pursuant to RIGL 1956 (1988 Reenactment) § 42-35-15.
FACTS/TRAVEL
The material facts are as follows. Karen Tate, plaintiff, is a resident of Westerly, Rhode Island. She is a disabled individual who receives Vocational Rehabilitation (VR) Services through the Department of Human Services (DHS).
On November 20, 1990, plaintiff executed an Individualized Written Rehabilitation Program (IWRP), whereby she was certified eligible for VR services. (Record at 3.) The IWRP form specifically listed plaintiff's planned goal to become a "Public Relations Representative" (Exhibit #4). One of the objectives and criteria listed to achieve her goal was her attendance at Rhode Island College (RIC) as a communications major. Her estimated enrollment time at RIC was from January, 1990, until December, 1992. Funding listed on the IWRP for her attendance was expressly divided among Similar Benefits (SB), Vocational Rehabilitation (VR), and clients (C).
Subsequent to the execution of the IWRP, the VR counsel procured a completed VR-28 form from the Financial Aid Office (FAO) at RIC. Federal Congressional methodology dictates that FAOs follow the Manual for Student Aid Administrators,
1991-1992 Ed. Chapter 9 (Student Aid Manual), to determine a basis for financial aid to be issued to students. The VR-28 form is a "Student Need and Aid Assessment" document which establishes the student's total needs to attend school. The "net remaining need" figure listed on the form is the amount to be granted by the VR agency to supplement the student's remaining needs. (Record, pp. 3, 4.) The VR agency determines the total VR award by following Section 28 of The Rhode Island VocationalRehabilitation Policy and Procedure Manual (VR Manual).
Ms. Tate submitted two VR-28 forms, the first on August 5, 1991, declaring her status as a full time student, and the second on September 20, 1991, modifying her status to that of a part-time student. An analysis of both forms reveals a noted increase of $1,270 listed as Ms. Tate's "net remaining need" from the first VR form to the second VR form.
FAO representative Janet O'Conner completed Ms. Tate's first VR form and listed plaintiff's "gross need" to be $8,470 (school budget of $9,670 less student/family contribution of $1,200); her "total assistance available" from outside sources was $3,600 (Pell grant of $2,400 plus CWS of $1,200); leaving plaintiff's "net remaining need" to be procured from the VR agency to be $4,870 (gross need of $8,470 less total aid of $3,600).
The second form which modified Ms. Tate's status to a part-time student listed plaintiff's "net remaining need" to be $6,070. This figure was calculated from plaintiff's "gross need" which remained at $8,470, less her "total assistance" available, which dropped to $2,400 (Pell grant of $1,200 plus CWS of $1,200). After calculations, Ms. Tate's revised "net remaining need" increased to $6,070 (gross need of $8,470 less total aid of $2,400).
Subsequent to the receipt of the second VR-28 form from the FAO, the VR agency developed a worksheet entitled "Training Grants" (Record, p. 4). This worksheet was promulgated as part of the Administrative Procedures Act filing in 1982, and has remained a part thereof since that time. This form takes the FAO's assessments listed on the VR-28 form and calculates the student's total expenses, training grants and the resulting Vocational Rehabilitation award. The VR listed Ms. Tate's total expenses at $887 (tuition of $620, textbooks of $125 and transportation of $142); training grants were listed at $1,200 (Pell Grant of $600 and CWS of $600). Thus, Ms. Tate's balance after calculating the total expenses of $887 less the total grants of $1,200 was zero dollars. Accordingly, the total Vocational Rehabilitation Award to Ms. Tate was zero dollars. Specifically noted is that the worksheet entry for "Room and Board" expense is calculated as the "amount paid" to the college. Accordingly, it reflects the cost of "Room and Board" at the institution attended. In the case at bar, no entry for "Room and Board" was made on Ms. Tate's worksheet. The entry remained blank, and zero dollars were calculated into Ms. Tate's "Room and Board" expenses to attend RIC.
On October 28, 1991, a written notice of denial of service was issued by the VR agency to Ms. Tate informing her that her request for financial assistance for postsecondary education had been denied. Plaintiff took a timely appeal.
A hearing was held Tuesday, January 7, 1992, at the Westerly District office at 9:30 a.m. before an Appeals Officer. During the course of the hearing, Ms. Tate argued that the practice of the VR agency is not consistent with federal law, and she contended that the VR inappropriately denied her a VR award by not following the federally mandated formula outlined in theStudent Aid Manual which determines the student's total expenses and needs by providing for both "on-campus" and "off-campus" living expenses.
The DHS relied on its own policy as outlined in Section 28 of the VR Policy and Manual. The VR bases its award on "direct living" expenses, and does not consider living "off campus" as a "direct living" expenses, Rather, the VR interprets "off campus" living as additional expenses and not direct expenses incurred as a result of attending the university.
In a decision issued March 31, 1992, the Appeals Officer found the action of the DHS Vocational Rehabilitation Agency representatives in calculating the Vocational Rehabilitation Award in the amount of zero dollars to be a correct action which must be sustained.
On appeal, plaintiff raises four issues. First, plaintiff argues the decision of the Appeals Officer was erroneous because it sustained an arbitrary and capricious action of the VR agency in failing to follow its policy regarding determination of financial need for higher education. Next, plaintiff contends that by its applying different standards, the VR agency violated federal law which mandates equal treatment. Third, plaintiff argues that by its blanket denial of financial assistance with living expenses to students living off campus, the VR violated the federal requirement to individualize rehabilitation services. Finally, the plaintiff contended that the VR agency misconstrued its training policy and unlawfully denied the plaintiff's assistance.
STANDARD OF REVIEW
This court's review of the DHS decision is governed by Section 42-35-15(g) of the Rhode Island General Laws which provides in part:
 42-35-15. Judicial review of contested cases.
 (g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
Essentially, when reviewing an agency decision this court must not substitute its judgment for that of the agency in regard to the credibility of witnesses or weight of the evidence. Costav. Registry of Motor Vehicles, 543 A.2d 1307, 1209 (R.I. 1988);Carmody v. R.I. Conflict of Interest, 509 A.2d 453, 458 (R.I. 1986). Thus, the court must uphold the Agency decision if it finds any legally competent evidence upon which the agency decision rests. Turner v. Department of Employment Security,479 A.2d 740, 742 (R.I. 1984). Thus, the court will reverse factual conclusions of administrative agencies only when they are "totally devoid of competent evidentiary support in the record".Milardo v. Coastal Resources Management Council, 434 A.2d 266, 272 (R.I. 1981). Of course questions of law decided by Administrative Agencies are not binding on the court. Carmody
at 458. Therefore, this court "may review questions of law to determine the law and its applicability to the facts." Chenot v.Bordeleau, 561 A.2d 891, 893 (R.I. 1989).
DISCUSSION
As a preliminary issue, this court will address the DHS argument raised in its supporting memoranda, that plaintiff's claims are moot. The DHS relies on Civil Rule 12(b)(1), lack of jurisdiction over the subject matter. The DHS contended that since Ms. Tate dropped out of RIC during the fall semester of 1991 due to non-financial reasons, she is neither a full-time nor a part-time student at the university, and does not have a viable claim. The DHS argued that plaintiff's case should be dismissed for lack of subject matter jurisdiction as a result of the mootness of her claims.
Contrary to defendant's argument, the referenced facts do not render plaintiff's case moot. "A case is moot if it raised a justiciable controversy at the time the complaint was filed, but events occurring after the filing have deprived the litigant of an ongoing stake in the controversy." Seibert Farms v. R. GaryClark, Tax Administrator, C.A. 90-518, Shea, J. (February 5, 1993). On the facts of this case, Ms. Tate did have a justiciable controversy at the time the complaint was filed. Even though at that time plaintiff was not enrolled as a full-time student, her claim will be capable of repetition throughout her college attendance. Thus, plaintiff has an ongoing stake in the controversy, and her claim is not moot.
In addition, a case is not moot if there is an "existence of an immediate and definite governmental action or policy that has adversely affected and continues to affect a present interest."Weinstein v. Bradford, 423 U.S. 147, 148 (1975). The record discloses that plaintiff has been adversely affected by defendant's policy and will continue to be so affected until the court reviews her stated claim.
Plaintiff contends that defendant's allegations are erroneous, and that she did not drop out of RIC due to non-financial reasons. She was forced to work an average of twenty-five hours a week in order to meet her living expenses. As a result of her need to be employed, plaintiff was unable to maintain her studies. Thus, had plaintiff been provided with financial assistance for her living expenses, she contends, she would have been able to work fewer hours and devote more time to her studies. This court finds that plaintiff has been damaged by the application of defendant's policy by not affording her financial assistance. Accordingly, plaintiff deserves relief.
Most importantly, plaintiff's claim for financial assistance is not moot because her claim will be repeated throughout her college attendance. The U.S. Supreme Court has noted that issues are not moot if they are "capable of repetition, yet evade review." So. PAC. Terminal Co. v. Int. Comm., 219 U.S. 498, 515 (1911). This court is mindful that "there are questions of extreme public interest which are capable of repetition but somehow evade review * * * these demand our attention, and quite properly come before us for decision." Mello v. Superior Court,
117 R.I. at 581, 37 A.2d, 1262, 1263 (1977). Accordingly, since plaintiff's claim is capable of repetition, a live justiciable controversy remains, and defendant's motion for dismissal pursuant to Civ. Rule 12(b)(1) is denied.
The next issue is whether the VR agency appropriately followed federal regulations in applying its own policy of not including "off-campus" housing as a "direct school" expense and ultimately not considering it a factor when calculating and arriving at plaintiff's zero dollar VR award. Pursuant to 20 U.S.C. § 720 (A), Vocational Rehabilitation services are provided through cooperative federal and state agreements to "assist states to meet the current and future needs of individuals with handicaps." The overall philosophy in providing VR services is based on "the fundamental belief that all individuals are entitled to realize their life's goals * * * and to be assisted on an individual basis." DHS Manual 150020021 § 101.1. Furthermore, 29 U.S.C. § 702 (A) Rehabilitation ServicesAdministration (RSA), provides that participating states must submit a state plan to RSA which outlines the policies and methods for administration of the State Rehabilitative program.
Specifically, R.I.G.L. § 42-12-1 states that the Department of Human Services (DHS) will administer Rhode Island's Vocational Rehabilitation program. Within the DHS, the VR agency is responsible for carrying out the federally regulated VR program. Pursuant to the Rhode Island Office of Rehabilitation ServicesCombined State Plan (hereinafter State Plan) p. 2, the source of funding for the DHS is provided through Federal monies. Section 1 of the State Plan dictates that as a condition to the receipt of said federal funds for VR services, the DHS agrees to administer the VR program in accordance with the provisions of this state plan, the Rehabilitation Act of 1973, and all applicable regulations which include both state and federal regulations. Accordingly, in achieving its stated goals and objectives, the DHS promulgates rules and regulations which must "conform with the federal law, by which it is bound." Coppolav. Fulton 809 P.2d 1291 at 1296 (Okl. 1991). See also Lukhardv. Reed, see note 10 at 481 U.S. 372, 107 Sct. 1810). Most important, R.I.G.L. § 42-12-11, Cooperation in administration offederal statutes, reiterates this premise:
 42-12-11. Cooperation in administration of federal statutes. The state department of human services shall cooperate, pursuant to agreements, with the federal government in carrying out the purposes of any federal statutes pertaining to vocational rehabilitation and is authorized to adopt such methods of administration as are found by the federal government to be necessary for the proper and efficient operation of the agreements on plans for vocational rehabilitation and to comply with such conditions as may be necessary to secure the full benefits of the federal statutes.
The plaintiff chiefly relied on federal congressional methodology to support her argument that the VR inappropriately determined the zero dollar VR award. The plaintiff's expert witness, Darlene Poisson, FAO representative for Providence College, testified that financial aid is established by adhering to the federal congressional formula outlined in the Student AidManual, which provides costs for tuition, fees, books, transportation, and "living expenses". (Record at 11.) The money provided for "living expenses" goes directly to the college and the excess is given to the student. (Record at 11.) Most importantly, she testified that "off-campus" and "on-campus" living expenses are both included in the formula. (Record, p. 11.) Specifically, the Student Aid Manual provides that among "the allowable costs of attendance for students enrolled at least half-time is * * * an allowance for Room and Board." In addition, the Federal Student Aid Manual provides that for students "without dependents," there is a "minimum Room and Board allowance" of $1,500 granted to a student who resides at home with parents.
The plaintiff contended that expenses incurred as a result of "living at home" and commuting to school are synonymous with expenses incurred as a result of living "off-campus." Plaintiff maintained that
 [A] student living off-campus is no less in need because of the location of his home. Living expenses are still expended and must be met * * * and the standard use for calculating costs of attending school for financial aid purposes includes off-campus living expenses. (Record, p. 18.)
In response to plaintiff's arguments, the DHS presented evidence that the federal methodology developed by congress pursuant to the Student Aid Manual is not utilized by the VR in its own manual, the VR Manual. (Record, p. 17.) The StudentAid Manual provides for a fixed amount for a student's "off-campus" living expenses. However, the VR representative testified that Section 28 of the VR Manual determines the VR award is not based on an analysis of need, but rather is a calculation based on "direct living" and school expenses. (Record at 17.) Specifically, the VR Manual provides that upon receipt of the VR-28 form back from the FAO at the school, the VR counselor
 will determine the amount of Agency financial participation by referring to the amount listed in Part B as "net remaining need." This figure will represent the amount the Agency will pay toward the cost of training up to a maximum of $1,500.00 per academic year. Should the net remaining need exceed the amount for institution, only the amount of these direct school expenses will be authorized to the school. In the event the net remaining need is below $100.00, no Agency Grant will be awarded.
An analysis of this section convinces this court that the agency's interpretation of its own rules is not valid. Although the section discusses the payment of "direct school expenses," the section neither implicitly nor expressly states that the VR award is not based on an analysis of need. In contrast, theRhode Island Office of Rehabilitation Services Combined StatePlan 1992, 1993, 1994 (State Plan) attachment 6.6 (a), specifically dictates that the state agency must subject certain VR services to an economic needs test. Among those listed, number 19 provides for "academic training in institutions of higher learning — Room and Board." Accordingly, the argument that the VR award is not based on need, but rather solely on "direct living expenses" is misplaced. Particularly noteworthy is that there is no express definition of what is considered a "direct school expense" in the VR policy.
Additionally, the record reveals a conflicting analysis by the VR representative at the hearing. First he testified that there is no distinction or definition anywhere in the VR policy between "off-campus" and "on-campus" housing expenses (record at 10), but later stated that the VR specifically does not consider "off-campus" living as a "direct school" or "direct living" expense. (Record at 17.) He argued the VR does not calculate any "off-campus" expense figure into the student's total expenses, and furthermore, does not calculate any "off-campus" expense into the student's resulting VR award. (Record at 17). In its supporting memoranda, the VR presented additional contradictory evidence. The VR argued that since Ms. Tate planned to "live at home" and commute to RIC, the apparent distinction between "off-campus" and "on-campus" living, which was discussed at the hearing, is now irrelevant. The supporting memoranda stated the VR does not consider expenses incurred while "living at home" to be "direct expenses," and thus those expenses are not included in calculating a student's total expenses. The VR's reasoning behind this presumption is that a student living at home and commuting to school incurs no expenses.
This court notes, "the deference due to an agency interpretation of its governing statute and regulations is far from blind allegiance." Citizens Savings Bank v. Bell, 605 F. Supp. 1033, 1042 (1985). Essentially then, the VR has misinterpreted its own agency regulations. Although the VR provides no written policy definition or distinction between "off-campus" or "on-campus" housing, at the hearing, the VR representative clearly distinguished that "off-campus" living expenses are not considered "direct living expenses" as referenced in Section 28 of the VR Manual. The VR then attempted to render its original distinction moot by stating the distinction was irrelevant because plaintiff was "living at home." This court finds the distinction between "off-campus" and "on-campus" living expenses to be immaterial when determining whether or not to include those costs in calculating a student's total "room and board" expenses. The argument presented by the VR that "living at home" and commuting to RIC is virtually a non-expense, does not comport with federal or state law. This court determines that all student expenses, whether incurred as a result of living "off-campus," or living "at home" and commuting, are considered "direct living and school expenses," and should be included when calculating a student's VR award. Pursuant to the DHS philosophy to aid students in need, and the necessity for the state regulations to adhere to the federal regulations (although individual plans, such as the VR, may establish priorities for accepting persons into their rehabilitation programs) this court finds that the agency may not in these circumstances "refuse services required by the Act and federal regulations." Turbedskyv. Conn. Dept. of Labor and Industry, 422 A.2d 849 (P.A. 1982).
The plaintiff additionally presented evidence that the VR did not comply with Federal Rule 34 CFR § 361.19 Cooperation WithOther Agencies, which provides in part:
 the state plan must assure that * * * it enters into cooperative arrangements with * * * other programs for individuals with handicaps such as * * * the state's developmental disabilities program * * * education programs, including adult education and higher education.
Specifically, plaintiff argued the VR agency did not comply with the agreement dated 12/7/83 entitled Understanding andProcedures between the FAO and the VR agency, which dictated that the VR agrees to:
 1. ensure that clients apply for financial assistance using the standard student financial aid application used by the postsecondary institutions which the student plans to attend.
 2. accept the educational institutional budgeting uniform needs assessment of the student and not authorize above the calculated need.
Pursuant to said agreement, FAO director at RIC wrote a letter stating that "Room and Board" are considered a major component of a student's total expenses to attend RIC." (Record. p. 13.) The plaintiff's counsel presented additional evidence from the financial aid office at URI. A letter from said office specifically states that URI includes as expenses tuition, books, and room and board in three categories — on campus, off campus, and off campus living in parent's home. Accordingly, in the instant facts, this court finds the VR agency ignored the FAO's established practice of including "Room and Board" when calculating Ms. Tate's total expenses and ultimate VR award. Ms. Tate was living "off-campus" and her resulting expenses should have been included when calculating her total "Room and Board" expenses.
The DHS administrative hearing process in function is akin to a flow-through system for evaluating problems. EnvironmentalScientific Corporation v. Louise Durfee, No. 90-5180 m.p., Sea J. (February 5, 1993) at 14. "Sitting as if at the mouth of the funnel, a hearing officer hears testimonial and documentary evidence from all affected parties. Id." As the funnel narrows, the hearing officer analyzes the evidence and renders a decision. The scope of review of this court is confined to determining whether there exists any legally competent evidence to support the agency's decision. Barrington School Committee v. RhodeIsland State Labor Relations Board, 608 A.2d 1126, 1138 (1992). Accordingly, after analyzing the federal regulations, the Rhode Island regulations and the cooperative agreement between the FAO and the VR agency, this court finds that the DHS decision does not comply with the policies dictated by law. This court fails to see the DHS's distinctions between living "on-campus," "off-campus," and "living at home" and commuting for purposes of determining whether or not to include said costs in the student's total living expenses and resulting VR award. Essentially, the DHS is interpreting Section 28 of the VR manual in such a way to deny VR awards to those students who live "off-campus" by not considering "off-campus" expenses to be "direct living expenses." This interpretation is not in compliance with the underlying principle of VR services and is against the policy purpose outlined in the DHS Manual 115.8 which specifically states, "these policies will be applied uniformly so that equitable treatment is accorded all handicapped individuals in similar circumstances."
The plaintiff has also requested reasonable costs and attorney's fees pursuant to G.L. 1956 (1984 Reenactment) chapter 92 of title 42, entitled Equal Access to Justice for Small Businesses and Individuals (Equal Justice Act). "Said act was propounded to mitigate the burden placed upon individuals and small business by the arbitrary and capricious decisions of administrative agencies." Taft v. Pare, 536 A.2d 888, 892 (R.I. 1988). Section 42-92-3 provides that when the agency conducts an adjudicatory proceeding, the prevailing party shall be awarded reasonable litigation expenses incurred in connection with that proceeding. However, such expenses will not be awarded to the prevailing party if the agency was "substantially justified in its actions leading to the proceedings and in the proceeding itself." Taft at 892. Prior to the enactment of the Equal Justice Act in 1985, a party who successfully contested an unjust agency decision had no statutory right to collect litigation expenses. Newport Yacht Management, Inc. v. Clark,567 A.2d 364, 367 (R.I. 1989). The Equal Justice Act created this right; therefore, the Act is clearly substantive in nature, and must be applied prospectively. Id. at 367.
In Krikorian v. R.I. Dept. of Human Services, 606 A.2d 671
(R.I. 1992), the court awarded attorneys' fees pursuant to the Equal Justice Act. In Krikorian, the plaintiff was denied medical assistance benefits by the DHS. On appeal, plaintiff was represented free of charge by the Rhode Island Legal Services. The trial justice affirmed the DHS decision not to grant medical assistance to the plaintiff, but reversed the DHS decision requiring plaintiff to initiate legal action to be eligible for medical assistance benefits. The trial justice determined that "DHS was not substantially justified in requiring Krikorian to initiate legal action as a condition for medical assistance."Krikorian at 676.
In the instant facts, the DHS denied plaintiff an award based on its interpretation of its own VR policy. This court is mindful that the plaintiff will not be awarded attorney's fees if "the agency's position is clearly reasonable, well founded in law and fact, solid, though not necessarily correct." Taft at 893. This court is unable to find that the DHS decision was substantially justified and reasonable in law and fact. Accordingly, the plaintiff's request for reasonable costs and attorney's fees pursuant to § 49-92-3 is hereby granted.
This court finds the decision by the appeals officer denying plaintiff assistance for postsecondary education was clearly erroneous in view of the reliable, probative and substantial evidence on the whole record and was clearly affected by error of law. Accordingly, the decision denying plaintiff a VR award is reversed, the plaintiff's appeal is hereby granted, and the matter is remanded to the DHS with direction to grant the plaintiff's application for financial assistance. The plaintiff's request for reasonable costs and attorney's fees pursuant to §42-92-3 is granted, as noted above, and counsel shall seek counsel fees on the appropriate calendar.
An order shall be submitted for entry within two weeks.