[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
This is an appeal from a decision of the State Personnel Appeals Board (hereinafter the "Board"). The plaintiff, Joseph P. Marciano, seeks a reversal of the Board's decision upholding his termination as an employee of the Department of Environmental Management (hereinafter "DEM"). Jurisdiction in this Superior Court is pursuant to G.L. 1956 (1988 Reenactment) § 42-35-15.
FACTS/TRAVEL
Joseph Marciano (hereinafter "plaintiff" or "Marciano") was employed by the DEM for a period of thirteen years. On March 29, 1990, the DEM notified Marciano that it was considering terminating his employment. The proposed termination was based on the following: 1) allegations that he falsified reported hours and accepted compensation for those hours, (2) allegations that he utilized a state vehicle during duty hours for improper purposes, and (3) convictions in the Superior Court of Rhode Island of four (4) felony counts and one (1) misdemeanor count on or about February 8, 1990.
A pre-disciplinary hearing was held on April 9, 1990 after which the DEM informed Marciano of his termination by letter of April 17, 1990. Mr. Marciano then appealed the termination to the Board which heard the matter on July 19, 1990, September 13, 1990 and January 29, 1991. Several witnesses testified and various documents were presented and marked as exhibits. The Board subsequently rendered a decision sustaining the termination. The plaintiff filed a timely appeal.
On this appeal, plaintiff alleges that the Board's decision is marred by various errors of law. Section 42-35-13 of our general laws confers appellate jurisdiction in this superior court to review decisions of the various state agencies. This section provides in pertinent part:
 Superior Court's Appellate Jurisdiction
 42-35-15. Judicial review of contested cases.
 (g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
Essentially, when reviewing an agency decision this court must not substitute its judgment for that of the agency in regard to the credibility of witnesses or weight of the evidence. Costav. Registry of Motor Vehicles, 543 A.2d 1307, 1209 (R.I. 1988);Carmody v. R.I. Conflict of Interest, 509 A.2d 453, 458 (R.I. 1986). Thus, the court must uphold the Agency decision if it finds any legally competent evidence upon which the agency decision rests. Turner v. Department of Employment Security,479 A.2d 740, 742 (R.I. 1984). Thus, the court will reverse factual conclusion of administrative agencies only when they are "totally devoid of competent evidentiary support in the record."Milardo v. Coastal Resources Management Council, 434 A.2d 266, 272 (R.I. 1981). Of course questions of law decided by administrative agencies are not binding on the court. Carmody
at 458. Therefore, this court "may review questions of law to determine the law and its applicability to the facts." Chenot v.Bordeleau, 561 A.2d 891, 893 (R.I. 1989).
Discussion of Plaintiff's Grounds for Appeal
Mr. Marciano contends that the judgment of the Appeals Board was made in violation of statutory provisions and upon unlawful procedure in that they dismissed him, a permanent classified employee, in violation of G.L. 1956 (1990 Reenactment) § 36-4-8. This section provides the standard which the Board must follow when dismissing a classified employee and reads in pertinent part as follows:
 A classified employee with permanent status may be dismissed by an appointing authority whenever he or she considers the good of the service to be served thereby, stated in writing, with full and sufficient reason, and filed with the personnel administrator.
The words `for the good of the service,' as used in the above excerpted statute, were interpreted by our court in Aniello v.Marcello, 91 R.I. 198, 162 A.2d 270 (1960). The Aniello court held that "such language has the effect of limiting the valid exercise of that power to dismiss for cause." Aniello, 91 R.I. at 207. That court further noted the well-settled principle that statutes empowering an administrative agency to act `for cause' indicate a legislative intention that the agency act in a judicial, or at least a quasi-judicial, capacity. Id. The words `for cause' have been interpreted as limiting the power of the authority to order removal of an employee and official of a licensee and requiring the presence of substantial grounds, established by legally sufficient evidence, in order to support such action." Id. (citing Narragansett Racing Association,Inc. v. Kiernan, 59 R.I. 79, 194 A. 49. (1937)). The Aniello Court was of the opinion that the service in 36-4-38 has like effect and any employee such section would be entitled to a hearing where the would be required to establish that the dismissal was grounds. Id.
Accordingly, this court must determine whether the felony conviction and the acts of falsifying work records, accepting compensation based on such records and making an improper use of a state owned vehicle are substantial grounds, and, if such acts do constitute substantial grounds, whether the Board's decision is supported by competent evidence.
The appellant has raised numerous issues for this court's consideration. First, appellant submits that the Board improperly admitted certified copies of the judgment of conviction and commitment State v. Marciano, C.A. No. Pl 88-0715B as well as a Bureau of Criminal investigation report. In or about February of 1990, Mr. Marciano plead nolo contendre and was convicted of violation of the RICO statute, organized crime gambling, bookmaking, conspiracy to organized crime gambling, and conspiracy to bookmaking.
In support of this first argument appellant refers to rule 609 (a) of the Rhode Island Rules of Evidence which governs the use of criminal convictions when used for impeachment purposes. Appellant argues that our Supreme Court has specifically ruled in State v. O'Brien, 122 R.I. 749, 412 A.2d 231 (1980) that evidence of criminal convictions may only be introduced to assess the credibility of a witness. Similarly under G.L. 1956 (1985 Reenactment) 9-17-15, which provides no person shall be deemed an incompetent witness because of his conviction of a crime, appellant submits that prior convictions are admissible only for impeachment purposes.
This court finds appellant's reading of O'Brien and §9-17-15 to be flawed. In O'Brien, a criminal case, the prosecution introduced evidence of the defendant's convictions expressly to impeach his credibility. That court held that when a sponsoring party introduces evidence of a conviction, the trial court must instruct the members of the jury that they must limit their use of the evidence to their assessment of the credibility of the witness and that otherwise it has no probative force
as proof of any elements of the crime charged. O'Brien,412 A.2d 231, 235 (1980). What O'Brien indicates or means is that while a conviction may be used to attack credibility it cannot also be used to prove an element of the present crime. The convictions in the present case are not being used to prove an element of the termination. Moreover, it is not the intent of the legislature in § 9-17-15 to prohibit the use of convictions for reasons other than impeachment. Instead, § 9-17-15 solely prohibits the use of a nolo plea conviction to deem a witness incompetent.
To further support his argument that the convictions were wrongly considered, plaintiff attempts to distinguish a conviction from a plea of nolo contendre. He states that G.L. 1956 (1981 Reenactment) § 12-18-3 recognizes a diminished status of a nolo contendre plea followed by probation without a prison term. Therefore, according to appellant, as he has not yet completed his probation, his conviction is certainly distinguished from those resulting in a prison sentence. Mr. Marciano would be correct in this assertion if solely probation had been imposed. Our court has held that a nolo plea followed by probation or a deferred sentence may not be considered as a conviction for impeachment purposes. Korsak v. PrudentialProperty Casualty Insurance, 441 A.2d 832, 834 (1982). However, the record reveals that in addition to the probation term, a suspended sentence and a fine were also imposed. This being the case, the law clearly provides that a nolo plea followed by a sentence (fine or imprisonment, whether or not suspended) constitutes a conviction which may be used to impeach credibility. Korsak, 441 A.2d at 835.
Clearly, a nolo contendre plea cannot be used against the defendant in any civil suit for the same act. Doughty v.DeAmoreel, 22 R.I. 158, 46 A. 838 (1900). However, it is important to note that the the present action is not a civil suit for the same act. Rather, it involves a separate and distinct set of facts and the Appeals Board does not seek to use the convictions to prove guilt or an element of the charged violation.
In Rhode Island a nolo plea, once accepted, becomes an implied confession of guilt. State v. Gobern, 423 A.2d 1177, 1179 (R.I. 1981). Thus, for the purposes of a case in which it is entered, such a plea is equivalent to a plea of guilty. Id.
(citing State v. Feng, 421 A.2d 1258 (R.I. 1980); Johnson v.Mullen, 390 A.2d 909 (1978); Nardone v. Mullen, 113 R.I. 415,322 A.2d 27 (1974); Cole v. Langlois, 99 R.I. 138, 206 A.2d 216
(1965); State v. McElroy, 71 R.I. 379, 46 A.2d 397 (1946)). InNardone, the court stressed that once the nolo plea is entered, it is as much a conviction as a jury-returned guilty verdict against the pleader would have been, and jeopardy attaches with the acceptance of the plea. Id. (citing Nardone v. Mullen,
113 R.I. at 418, 322 A.2d at 29 (1974)).
With respect to the admissibility of a nolo plea in an administrative proceeding, the 6th circuit in Myers v. Secretaryof Health and Human Services, 893 F.2d 840 (6th Cir. 1990) did address this precise issue and held a conviction pursuant to a plea of nolo contendre is admissible in an administration proceeding. Myers, 893 F.3d at 843. The Myers court referred to Fed. R. Crim. P. 11(e)(6) and Fed. R. Evid. 410 and found that these two rules do not preclude the use of a nolo contendre conviction in an administrative proceeding. The Myers court reasoned, first, that the rules prohibit use of "a plea of nolo contendre, not a conviction pursuant to a nolo plea." Id.
Second, the rules prohibit use of a nolo plea "in any civil or criminal proceeding," not in an administrative proceeding. Id.
R.I.R. Evid. 410 and R.I.R. Crim. p. 11 are fashioned after the federal rules and this court finds the reasoning of the Myers
Court persuasive.
Furthermore, the advisory committee, in their notes to R.I.R. Evid. 410, concluded that non-withdrawn and non-filed pleas of nolo contendre that are followed by a sentence are to be treated in subsequent civil and criminal cases exactly like nonwithdrawn guilty pleas. In other words, where otherwise admissible they should be admissible substantively under Rule 410 and for impeachment purposes under Rule 609. In addition, R.I.R. Evid. 803 (22) allows judgment of a previous conviction to be admitted to prove any fact essential to sustain the judgment.
Based on the aforementioned reasons, this court finds that the plaintiff's pleas of nolo contendre and the subsequent convictions contained in the judgment of conviction and BCI report were properly considered by the Board as evidence in the termination proceedings. Accordingly, the question now becomes whether these convictions provided substantial grounds so that the dismissal was for the good of the service. Aniello,91 R.I. 198, 162 A.2d 270 (1960).
Notwithstanding the evidence presented as to appellant's conduct, the Board found that the convictions were sufficient to uphold a dismissal. The Board based this finding on the level of trust and responsibility conferred upon the appellant in his position with the department. The Board found that Mr. Marciano's convictions were "totally inconsistent with his job responsibilities and seriously affected his ability to perform his assigned duties." Specifically, the Board concluded that part of Mr. Marciano's duties included: "working with community recreation leaders for the planning of recreational activities; assisting in the programming of activities; representing the Division of Parks and Recreation at workshops, conferences and at public functions." In addition, the Board found that part of his responsibilities included speaking at elementary schools regarding safety and recreation programs. Clearly, it is not this court's duty to weigh the evidence, but merely to examine the record to determine whether there is any legal evidence or reasonable inferences therefrom to support the findings of the Board. Hardiman v. Personnel Appeal Board, 100 R.I. 145, 152,211 A.2d 660, 664 (1965). Accordingly, after its review of the record, this Court finds that the dismissal was justified and supported by substantial grounds.
The next issue for this court's consideration is whether the Board's decision was clearly erroneous in view of the reliable, probative and substantial evidence or was arbitrary and capricious. The Board found that in addition to the felony convictions there was sufficient evidence to justify dismissal of Mr. Marciano. However, the Board also recognized that there was some conflict in the testimony relative to plaintiff's working hours and length of lunch hour.
The Board had before it the following evidence. Detective Corporal Carlton Steel of the Rhode Island State Police testified that he observed Mr. Marciano at an establishment known as Larry's Lounge in Centerdale. While other testimony in the record indicated that Mr. Marciano's work day was from 8:30 a.m. to 4 p.m. with one hour for lunch, Detective Steel made specific observations of Mr. Marciano on the following dates:
 1) January 9, 1990 — Detective Steel testified that he observed Mr. Marciano's personal vehicle in the parking lot of Larry's Lounge from 2:15 p.m. until 4:00 p.m., at which time Detective Steel left the surveillance.
 2) January 12, 1990 — Detective Steel observed the state vehicle assigned to Mr. Marciano in the parking lot of Larry's Lounge at 3:15 p.m.
 3. January 15, 1990 — Martin Luther King Day, a state holiday, Detective Steel observed Mr. Marciano's state vehicle in the parking lot of Larry's Lounge.
 4) January 16, 1990 — Detective Steel observed Mr. Marciano's state vehicle in the parking lot to Larry's Lounge from 2:30 p.m. until 3:56 p.m.
 5) January 17, 1990 — Mr. Marciano's state vehicle was in the parking lot of Larry's Lounge at 2:20 p.m., when Steel arrived. Mr. Marciano left the premises at 2:24 p.m.
 6) February 14, 1990 — Detective Steel observed the plaintiff arrive at the parking lot of Larry's Lounge at 2:00 p.m. Mr. Marciano then left with the owner of Larry's Lounge at 2:15 and returned shortly thereafter. Mr. Marciano returned and remained there at least until Steel left the surveillance at 2:50 p.m.
The DEM introduced several time records and documents reflecting Mr. Marciano's hours at work. Specifically, John Flatus, the Deputy Chief of the Division of Parks and Recreation in DEM, introduced an "anticipated activities sheet," which was prepared by Mr. Marciano and which indicated where he would be for the following week. Also produced were sign/in and sign/out sheets and a water safety inspector's log for the dates in question. These inspector's logs were intended to show the date and location of inspection, the arrival and departure times, and the site contact person. Additionally, Mr. Flatus submitted plaintiff's "job cards" for the dates in question. These cards are filled out by each employee and are forwarded to their supervisor and division chief. The cards are reviewed, and time sheets are then prepared and forwarded to the office of employee relations for preparation of paychecks.
Ms. Melanie Mouradjian, Chief Employee relations officer of DEM, upon being informed of Detective Steel's investigation and Mr. Marciano's convictions compared the above documents with Detective Steel's testimony. After making such comparison, Ms. Mouradjian determined that there existed a an inconsistency with respect to the hours Mr. Marciano claimed to have worked.
Mr. Marciano testified that he was not at Larry's Lounge on the days in question. Rather, he testified that he was eating lunch at Corrina's Restaurant, an adjoining establishment. Furthermore, he testified that on January 9, 1990 he was using his state vehicle, not, as Officer Steel testified, his DEM vehicle. On January 12, 1990, according to plaintiff's testimony, he arrived at the restaurant at approximately 2:45-3:00 p.m., had an hour for lunch and then, as per department policy, returned home. Mr. Flatus testified that he often permitted his employees not to return to the office if only a short amount of time remained in the work day. With respect to Martin Luther King day, Mr. Marciano does not recall using the state vehicle. Mr. Marciano testified that he went to Corrina's Restaurant on January 16, 1990 at approximately 2:30 p.m. but does not recall what time he left. Finally, plaintiff corroborates Detective Steel's testimony regarding February 14, 1991.
After giving due consideration to all the testimony and evidence presented, the Board concluded that "the undisputed testimony is that at least on January 9, 1990, January 16, 1990 and February 14, 1990, plaintiff exceeded even the one (1) hour lunch period he claimed for his lunch period." The Board further noted that on January 15, 1990, there was undisputed testimony that plaintiff used the state vehicle for purposes not authorized.
Alternatively, the plaintiff argues that the testimony was not "undisputed." In fact, plaintiff attempts to dispute the allegations and points to portions of his testimony before the Board in which he claims he counters the observations of Detective Steel.
Inherent in the Board's finding that the plaintiff exceeded his lunch period and used a state vehicle for improper purposes is the reasonable inference that the Board assessed the credibility of each of the testifying witnesses, weighed the evidence presented, and awarded due consideration to each. The provisions of § 42-35-10(a) entrust a hearing officer with the ability to exercise such prudence in considering evidence and the reliability that must condition its admissibility. Clearly, the question of credibility and the weight to be given to such evidence was for the Board and not this Court. Because this Court finds there is competent evidence in the record to support the Board's findings, they will not be disturbed.
Plaintiff makes several other arguments to further the claim that the Board's decision was clearly erroneous, arbitrary and capricious. First, plaintiff challenges the Board's classification of him as a "recreation program specialist." This court finds this argument to be without merit as it has no relation to the Board's decision. Next, plaintiff claims that DEM's rules and regulations regarding the use of state vehicles was not communicated to him. Based upon a review of the record and Mr. Marciano's testimony, this Court is satisfied that he was sufficiently aware of the policy that state vehicles were not to be used during off duty hours.
Third, plaintiff argues that DEM failed to prove its case because they never established whether plaintiff was at Larry's Lounge or at Corrina's Restaurant on the dates in question. However, the Board's decision does not make a distinction as to what establishment plaintiff was frequenting. Rather, the Board based its decision on the finding that plaintiff exceeded his one hour lunch break and used the state vehicle for improper purposes. Lastly, plaintiff contends that Mr. Flatus never saw plaintiff act improperly. Flatus based his testimony on the reliable investigation and subsequent testimony of Detective Steel. The fact that Mr. Flatus did not personally witness the plaintiff's acts does not adversely affect the Board's decision.
The plaintiff has also alleged that the Board's decision was made upon unlawful procedure. Although the Rhode Island Rules of Evidence are to provide the usual and most helpful standard for a hearing officer in adjudicating the competency of evidence,DePasquale v. Harrington, 599 A.2d 314 (R.I. 1991), an expert administrative tribunal concerned with advancing the public welfare should not be rigidly governed by Rules of Evidence designed for juries. Id. For example, a hearing officer may take into account evidence that would be excluded from a trial by jury if it would be prudent to do so, given the requirements of the statute being enforced. Id. Specifically, G.L. 1956 (1988 Reenactment) sec. 42-35-10(a) embodies such a balancing between inherent reliability and requisite efficiency. Id. Section42-35-10(a) provides in pertinent part:
 Irrelevant, immaterial, or unduly repetitious evidence shall be excluded. The rules of evidence as applied in civil cases in the superior courts in this state shall be followed; but, when necessary to ascertain facts not reasonably susceptible of proof under those rules, evidence not admissible under those rules may be submitted (except where precluded by statute) if it is of a type commonly relied upon by reasonably prudent men in the conduct of their affairs. . . ."
The plaintiff contends that the Board improperly allowed the introduction of the aforementioned documents as full exhibits because they were improperly authenticated. As to the weekly time cards, this court finds that they were properly authenticated and fall within the business records exception to the hearsay rule. Applying the more lenient evidentiary standard set out above, this court further concludes that the admittance of the remaining records was not prejudicial and such admittance will not create cause for reversal.
Plaintiff further contends that the Board considered irrelevant testimony when Detective Steel was allowed to testify regarding the reason for his surveillance of Larry's Lounge. After its review of the record, this courts finds that this testimony was not irrelevant or prejudicial and does not constitute a sufficient basis for reversal.
Plaintiff makes several final arguments. First, that the Board failed to conduct a de novo hearing when they allowed DEM to present evidence from the pre-termination hearing. Although the Board did allow testimony regarding the pre-termination hearing, such testimony did not deprive plaintiff of a de novo hearing. In fact, there is nothing in the record which would cause this court to find that the panel placed an undue amount of emphasis on the testimony regarding the pre-termination hearing.
Next, plaintiff submits that through the testimony of Ms. Mouradjian the Board allowed egregious hearsay to be introduced and considered. This court does not agree. Both the United States Supreme Court and the Rhode Island Supreme Court have stated directly that hearsay evidence is admissible in administrative proceedings. DePasquale v. Harrington, 599 A.2d 314 (R.I. 1991) (citing Richardson v. Perales, 402 U.S. 389, 409-410, 91 S.Ct. 1420, 1431, 28 L.Ed.2d 842, 857 (1957)); Federal TradeCommission v. Cement Institute, 333 U.S. 683, 705-06, 68 S.Ct. 793, 92 L.Ed 1010, 1037 (1948); Craig v. Pare, 497 A.2d 316, 320 (R.I. 1985). Upon a review of the record, this court finds that the Board did not erroneously consider Ms. Mouradjian's testimony.
Lastly, plaintiff argues that it was prejudicial error to allow DEM to recall Ms. Mouradjian at the hearing. In a criminal proceeding, the decision whether to recall a witness is within the sound discretion of the trial judge and will not be disturbed unless it has been improperly exercised or there has been abuse.State v. Young, 456 A.2d 739 (R.I. 1983). The hearing before the Appeals Board was administrative in nature. There was no jury present. Hence, the usual safeguards, protecting the jury from unreliable or confusing testimony, were not necessary. The recall of Ms. Mouradjian was brief and non-prejudicial. Accordingly, the Board acted within its discretion when it allowed Ms. Mouradjian to be recalled.
After review of the record, this Court finds that there is substantial grounds, established by legally sufficient evidence, to support the Board's finding. For the reasons herein set out, the decision of the Board is sustained and plaintiff's appeal is denied.